# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                Debtors.[1] | PROMESA<br>Title III<br>No. 17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                Debtor. | PROMESA<br>Title III<br>No. 17-BK-4780-LTS |
| LUMA ENERGY, LLC and LUMA ENERGY SERVCO, LLC,<br><br>                Plaintiffs,<br><br>   -v-<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY and PUERTO RICO PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY,<br><br>                Defendants. | Adv. Proc. No. 25-00043-LTS in 17-BK-4780-LTS |

## PUERTO RICO PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY'S JURISDICTIONAL OPPOSITION TO LUMA'S COMPLAINT AND MOTION FOR PROVISIONAL RELIEF

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ........................................................................... 4

LEGAL ARGUMENT ..................................................................................... 8

    I.       THE COURT LACKS SUBJECT-MATTER JURISDICTION. ......................... 8

          A.     The Court does not have "arising under" or "arising in" jurisdiction. ........................................................................ 10

          B.     The Court does not have "related to" jurisdiction. ................................ 10

          C.     The Court cannot exercise supplemental jurisdiction over Count II. ...... 16

          D.     The Court cannot enjoin or issue any other relief against P3A because it has sovereign immunity under the Eleventh Amendment and cannot be sued in the Title III Court. ...... 17

    II.      THE COURT SHOULD ABSTAIN FROM ADJUDICATING THE MOTION ..................................................................................... 21

          A.     LUMA is blatantly forum shopping ........................................... 22

          B.     State law issues predominate over bankruptcy issues ............................ 26

          C.     The proceeding is unrelated to and remote from the main bankruptcy case ..................................................................... 27

          D.     The proceeding is not a "core" proceeding ........................................... 27

          E.     There is no jurisdictional basis other than 28 U.S.C. § 1334. ................. 28

          F.     The proceeding does not have an effect on the efficient administration of the estate. ....................................................... 28

          G.     The proceeding would substantially burden the Court's docket ............. 29

          H.     P3A is a nondebtor, indispensable party ................................................. 29

          I.     There is no related proceeding commenced in state court or other non-bankruptcy court because LUMA refuses to adhere to the T&D OMA. ........................................................................ 30

CONCLUSION ............................................................................................. 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abakan, Inc. v. Uptick Cap., LLC,*
   943 F. Supp. 2d 410 (S.D.N.Y. 2013) ...................................................................... 15

*Asociación de Salud Primaria de P.R., Inc. v. P.R. (In re Fin. Oversight & Mgmt.*
   *Bd. for P.R.),*
   330 F. Supp. 3d 667 (D.P.R. 2018) ............................................................. 21, 22, 27

*Bos. Reg'l Med. Ctr., Inc. v. Reynolds (In re Bos. Reg'l Med. Ctr., Inc.),*
   410 F.3d 100 (1st Cir. 2005) ............................................................................... 13

*Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.,*
   No. CIV.A. 10-11376-NMG, 2010 WL 6580503 (D. Mass. Dec. 28, 2010) ........................ 22

*Clemente Props., Inc. v. Pierluisi Urrutia,*
   693 F. Supp. 3d 215 (D.P.R. 2023) ....................................................................... 17

*Del. Tr. Co. v. Wilmington Tr., N.A.,*
   534 B.R. 500 (S.D.N.Y. 2015) ............................................................................. 25

*Deschutes Rivera All. v. Portland Gen. Elec. Co.,*
   1 F.4th 1153 (9th Cir. 2021) ............................................................................... 30

*Diaz Contracting, Inc. v. Nanco Contracting Corp., (In re Diaz Contracting, Inc.),*
   817 F.2d 1047 (3d Cir. 1987) .............................................................................. 24

*DiNapoli v. DiNapoli,*
   1995 WL 555740 (S.D.N.Y. Sept. 19, 1995) ............................................................ 9

*Do No Harm v. Pfizer Inc.,*
   126 F.4th 109 (2d Cir. 2025) ............................................................................... 8

*Downing v. Globe Direct LLC,*
   806 F. Supp. 2d 461 (D. Mass. 2011) .................................................................... 30

*Ex parte McCardle,*
   74 U.S. 506 (1868) ........................................................................................... 8

*Feeney v. Port Auth. Trans-Hudson Corp.,*
   873 F.2d 628 (2nd Cir. 1989) .............................................................................. 20

*Feltman v. Tri-State Empl'mt Serv., Inc. (In re TS Empl'mt, Inc.),*
   641 B.R. 753 (Bankr. S.D.N.Y. 2022) .................................................................... 14

*Fietz v. Great Western Sav. (In re Fietz),*
   852 F.2d 455 (9th Cir. 1988) ............................................................................... 11

*First Bank P.R. Inc. v. Bert Foti (In re Int'l Home Prods. Inc.),*
   491 B.R. 607 (Bankr. D.P.R. 2013) ....................................................................... 13

*Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular*
   *Ctr. Corp.,*
   322 F.3d 56 (1st Cir. 2003) ................................................................................. 17

ii

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Goldsmith v. Macri Assocs., Inc. (In re E & G Waterworks, LLC)*,
    571 B.R. 500 (Bankr. D. Mass. 2017) ............................................. 26

*Grajales v. P.R. Ports Auth.*,
    831 F.3d 11 (1st Cir. 2016) ........................................................ 17, 18

*Great River Indus., Inc. v. Pub. Serv. Comm'n of P.R.*,
    131 F. Supp. 2d 265 (D.P.R. 2001) ............................................... 20

*Gupta v. Quincy Med. Ctr.*,
    858 F.3d 657 (1st Cir. 2017) ........................................................ 10

*Herrero-Domenech v. LUMA Energy, LLC (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
    Adv. Pro. 22-00050-LTS (D.P.R. Oct. 28, 2022) .......... 3, 11, 13, 14, 22, 26, 27, 28

*Hess v. Port Auth. Trans-Hudson Corp.*,
    513 U.S. 30 (1994) ...................................................................... 18

*Holland Indus., Inc. v. United States (In re Holland Indus., Inc.)*,
    103 B.R. 461 (Bankr. S.D.N.Y. 1989) ......................................... 14, 15

*In re Exide Techs.*,
    544 F.3d 196 (3d Cir. 2008) ........................................................ 25

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    621 B.R. 289 (D.P.R. 2020) ........................................................ 11

*In re G.S.F. Corp.*,
    938 F.2d 1467 (1st Cir. 1991) ..................................................... 11

*In re Roman Cath. Bishop of S.D.*,
    374 B.R. 756 (Bankr. S.D. Cal. 2007) ......................................... 22

*In re Solutia, Inc.*,
    653 B.R. 99 (Bankr. S.D.N.Y. 2023) ........................................... 29

*Irizarry-Mora v. U.P.R.*,
    647 F.3d 9 (1st Cir. 2011) ........................................................... 19

*KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*,
    600 B.R. 214 (S.D.N.Y. 2019) ..................................................... 23

*KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*,
    184 F.3d 42 (1st Cir. 1999) ......................................................... 24

*LM Waste Serv. Corp. v. Municipio de Juana Diaz (In re LM Waste Serv. Corp.)*,
    562 B.R. 845 (Bankr. D.P.R. 2016) ............................................. 26

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ....................................................................... 24

*MBNA Am. Bank, N.A. v. Hill*,
    436 F.3d 104 (2d Cir. 2006) ....................................................... 26

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Metcalf & Eddy v. P.R. Aqueduct & Sewer Auth.*,
991 F.2d 935 (1st Cir. 1993) ......................................................................... 19

*Morales Felicano v. Rullan*,
303 F.3d 1 (1st Cir. 2002) ............................................................................... 8

*Munaf v. Geren*,
553 U.S. 674 (2008) ........................................................................................ 8

*Murphy v. United States*,
45 F.3d 520 (1st Cir. 1995) ........................................................................... 20

*N.J. Dept. of Env't Prot. v. Occidental Chem. Corp. (In re Maxus Energy Corp.)*,
560 B.R. 111 (Bankr. D. Del. 2016) ............................................................. 31

*Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins (In re Integrated Health Servs., Inc.)*, 291 B.R. 615 (Bankr. D. Del. 2003) ...................................... 31

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3rd Cir. 1984) ................................................................... 10, 11

*Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*,
215 F.3d 195 (1st Cir. 2000) ......................................................................... 16

*Platte River Bottom, LLC v. Advantage Bank (In re Platte River Bottom, LLC)*,
2015 WL 3897453 (Bankr. D. Colo. June 23, 2015) ..................................... 25

*Regents of the Univ. of Cal. v. Doe*,
519 U.S. 425 (1997) ...................................................................................... 17

*Reyes-Garay v. Integrand Assurance Co.*,
818 F. Supp. 2d 414 (D.P.R. 2011) .............................................................. 18

*Riefkohl v. Alvarado*,
749 F. Supp. 374 (D.P.R. 1990) ................................................................... 18

*Roman Cath. Diocese of Rockville Centre, New York v. Ark320 Doe (In re Roman Cath. Diocese of Rockville Centre, New York)*,
651 B.R. 622 (Bankr. S.D.N.Y. 2023) ......................................................... 11

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996) ........................................................................................ 17

*Steele v. Ocwen Fed. Bank (In re Steele)*,
258 B.R. 319 (Bankr. D.N.H. 2001) ............................................................. 27

*Torres Cruz v. LUMA Energy, LLC (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
631 B.R. 607 (D.P.R. 2021) .................................................................. 3, 11, 12

*Triad Guar. Ins. v. Am. Home Mortg. Invs. Corp. (In re Am. Home Mortg. Holding)*,
477 B.R. 517 (Bankr. D. Del. 2012) ............................................................. 14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*,
752 F. Supp. 2d 517 (E.D. Pa. 2010) ................................................................ 24

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*,
591 F. 3d 164 (3d Cir. 2009) ............................................................................ 14

*Work/Family Directions, Inc. v. Children's Discover Ctrs., Inc. (In re Santa Clara Cnty.
Child Care Consortium)*,
223 B.R. 40 (B.A.P. 1st Cir. 1998) ................................................................... 12

**Statutes**

28 U.S.C. § 1334 ............................................................................... 2, 8, 21, 28

28 U.S.C. § 1367 ...................................................................................... 16

28 U.S.C. § 157 .................................................................................... 25, 27

Act 120 of June 21, 2018, the Puerto Rico Electric Power System Transformation Act ............... 4

Act 29 of June 8, 2009, the Public-Private Partnership Authority Act ............................ 4, 18, 19

PROMESA § 306 ........................................................................................ 8

PROMESA § 309 ........................................................................................ 2

**Other Authorities**

H.R. Rep. No. 95-595, 95th Cong., 2d Sess. 42-52, *reprinted in* 1978 U.S. Code Cong. &
Ad. News 5963, 6004–13 ................................................................................ 14

**Rules**

Fed. R. Civ. P. 19 .................................................................................... 29

**Constitutional Provisions**

U.S. Const. Am. XII .................................................................................. 17

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Puerto Rico Public-Private Partnerships Authority ("P3A"),[1] through its agent the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), objects to *LUMA's Motion for Provisional Relief and Certain Exhibits* ("Motion") [Dkt. Nos. 6, 28], and moves to dismiss this action for lack of subject-matter jurisdiction under the Court's September 3, 2025 Order [Dkt. No. 26] as follows[2]:

## PRELIMINARY STATEMENT

P3A has several disputes with LUMA Energy, LLC's and LUMA Energy ServCo, LLC's (collectively, "LUMA") performance under the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement dated as of June 22, 2020 ("T&D OMA") and wants them resolved quickly in accordance with that agreement. LUMA, which seeks to evade responsibility for its conduct, doesn't. Notwithstanding an express provision in the postpetition T&D OMA providing that the Commonwealth Court of First Instance, San Juan Part ("Commonwealth Court") is the exclusive forum for resolving disputes over that agreement, including requests for provisional and injunctive relief, LUMA filed a Complaint in this Court trying to force this Court to interpret the T&D OMA. LUMA seeks a preliminary injunction seeking to (i) enjoin Defendants from pursuing the parties' agreed-upon dispute resolution process before an Independent Expert and (ii) compel Defendants to mediate the question of whether the parties' Threshold Dispute should be resolved before an Independent Expert or a mediator.[3] The Motion's narrow, procedural

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Complaint, Motion, and/or T&D OMA. Other capitalized terms used in the Preliminary Statement are defined below. Unless otherwise noted, all emphasis is added and internal quotation marks have been omitted.

[2] As noted below, P3A has a contractual right to defend suits against PREPA. While P3A recognizes the Oversight Board's right to be heard on the Motion under PROMESA, P3A respectfully submits that it speaks on behalf of PREPA.

[3] *See* Motion at 16–17.

request to force mediation of the Threshold Dispute has no conceivable effect on the administration of PREPA's bankruptcy case that would make it "related to" PREPA's Title III case. Put differently, the issue of whether an Independent Expert or a mediator decides whether the parties' Threshold Dispute should be mediated does not affect PREPA's bankruptcy case. And the Complaint's other counts—for breach of contract and to declare that the parties' disputes are not Technical Disputes, but Disputes, as defined by the T&D OMA—are straightforward contract claims that can be readily resolved by a Commonwealth Court and also have no conceivable effect on PREPA's Title III case. The Court thus lacks subject-matter jurisdiction over this dispute.

Should the Court determine that it has subject-matter jurisdiction, the Court should exercise its broad discretion to abstain under PROMESA § 309 and 28 U.S.C. § 1334(c)(1) . As described below, the relevant factors in the well-established, multi-factor test for granting abstention weigh overwhelmingly in favor of doing so here. Applying those factors shows abstention is warranted principally because:

- LUMA is transparently forum shopping and trying to evade its postpetition agreement that disputes under the T&D OMA, like those it's raising here, should be exclusively decided in the Commonwealth Court;

- This is a dispute with P3A about P3A's rights under the T&D OMA and the appropriate dispute-resolution mechanism when disputes arise between P3A and LUMA, not debtor-creditor relations or Oversight Board-Governmental matters;

- Abstention is particularly appropriate where a key party in the dispute, P3A, is not subject to this Court's jurisdiction under the Eleventh Amendment.

- State law contract issues indisputably predominate, the controversy is remote from the core restructuring tasks before this Court, and resolution by a Commonwealth Court would neither burden creditors nor delay the Title III process; and

- Allowing the parties' carefully negotiated dispute-resolution architecture to function as written honors Puerto Rico law, respects the balance Congress struck in PROMESA, and promotes judicial economy, particularly in light of the fact that this case may not be heard against P3A as an immune entity.

This is not the first time LUMA has tried to force state-law litigation into this Court. Each time, the Court has found that it either does not have jurisdiction or that it should not hear the matter because the Commonwealth Court was the appropriate forum. *See Torres Cruz v. LUMA Energy, LLC (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 631 B.R. 607, 610 (D.P.R. 2021) (finding the Court did not have subject-matter jurisdiction over a motion to compel LUMA to respond to legislative subpoenas that LUMA had removed to the Title III Court from the Commonwealth Court); *R & R on the Pls.' Req. for Remand*, *Herrero-Domenech v. LUMA Energy, LLC (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, Adv. Pro. 22-00050-LTS, at 12 (D.P.R. Oct. 28, 2022) (Dein, J.) (citing *Torres Cruz*, 631 B.R. at 610) [Dkt. No. 16] (finding that the court should abstain from hearing a case LUMA sought to remove to the Title III Court from the Commonwealth Court). The Court should do the same here and refuse to entertain LUMA's requested relief.[4]

Lastly, the Court should deny provisional relief on jurisdictional grounds and dismiss the Complaint because P3A is an indispensable party to this suit but it cannot be sued in federal court

---

[4] P3A disputes the merits of the allegations in the Complaint regarding the disputes between the Parties, which are misguided or otherwise incorrect, and will address them in future proceedings before the appropriate forum.

because it is entitled to sovereign immunity under the Eleventh Amendment. P3A has, with respect
to this matter, waived sovereign immunity under the T&D OMA for litigation only in the
Commonwealth Court. This presents extremely complex issues that the Court can avoid
determining if it abstains (and ultimately dismisses this case).

## FACTUAL BACKGROUND

1.      Defendant P3A is a public corporation created to safeguard the public interest when
private entities are entrusted with operating critical infrastructure. *See* Act 29 of June 8, 2009, the
Public-Private Partnership Authority Act, Statement of Motives (the "P3A Enabling Act" or "Act
29"). Act 120 of June 21, 2018, the Puerto Rico Electric Power System Transformation Act,
designates P3A as the government entity responsible for the functions, services, and facilities of
public-private partnerships in the electric sector. *See* Act 120 § 5(a).

2.      Under the T&D OMA,[5] LUMA agreed to manage PREPA's transmission and
distribution system. P3A is the Administrator of the T&D OMA. One of P3A's primary functions
thereunder is to ensure that LUMA complies with its contractual, statutory, and regulatory duties
so that Puerto Rico's residents receive safe, reliable, and affordable electric service. *See* T&D
OMA § 6.2(a). Per the T&D OMA, when a dispute arises with respect to P3A's rights and
responsibilities as administrator, that dispute shall be subject to resolution as a Technical Dispute,
as more fully set forth below. T&D OMA § 6.2(b).

3.      The T&D OMA sets out two mechanisms for resolving disputes between the
parties: for "Technical Disputes," a confidential, expedited dispute-resolution process before an
ICC-appointed Independent Expert, and for "Disputes," mediation and, if needed, litigation. The

---

[5] The T&D OMA is attached to the Complaint as Exhibit A.

Technical Disputes category channels disputes concerning, *e.g.*, administrator disputes,[6] service fees and accounts, budget performance, disallowed costs, and force majeure events, into an expedited resolution process to avoid protracted litigation and to assure rapid, expert-driven resolutions. T&D OMA §§ 15.3, 15.4. Disputes are all other contractual disagreements that are not Technical Disputes. T&D OMA § 15.1. Under Section 15.4(a) of the T&D OMA, Technical Disputes that cannot be otherwise resolved between the parties "shall be referred to an Independent Expert for a final and binding expert determination" (the "Technical Dispute Resolution Process"). Section 15.5 of the T&D OMA sets forth the procedures for resolving a Dispute, other than a Technical Dispute, through mediation (the "Dispute Resolution Process") if it cannot be resolved by the parties. Either LUMA or P3A may refer the Dispute to mediation through a written notice of mediation. T&D OMA § 15.5(a).

4.      Under the T&D OMA, the parties expressly agreed that "to resolve any and all claims arising out of this Agreement (other than any Technical Dispute), they may file a civil action, including actions in equity, in the Commonwealth Court." T&D OMA § 15.6(a). They also agreed that, notwithstanding any other provision in the T&D OMA, any party to the T&D OMA can initiate a proceeding in the Commonwealth Court to obtain emergency or provisional remedies necessary to protect its rights, including temporary and preliminary injunctive relief and restraining orders, to "provide uninterrupted electrical and other services or preserve the status quo pending the conclusion of such negotiation, mediation or litigation." T&D OMA § 15.8. And the parties "each irrevocably consent[ed] to the exclusive jurisdiction of [Commonwealth] courts in any such

---

[6]      Administrator Disputes include disputes with respect to Section 6.2(a)(ii) through (xi) of the OMA, including, without limitation, as to "Operator's performance of … the O&M Services" and "Operator's compliance with Federal Funding Requirements." T&D OMA §§6.2(b) and 6.2(a)(v) and (vi).

actions or proceedings, waive[ed] any objection it may have to the jurisdiction of any such action or proceeding, as well as objections or defenses based on sovereign immunity." T&D OMA § 15.6(a).

5.      When the parties executed the T&D OMA, LUMA represented that it possessed "world-class expertise and financial discipline" to operate Puerto Rico's grid, secure federal reconstruction funds, and implement long-delayed system modernizations. *See* Complaint, Ex. B. P3A relied upon those representations when it recommended that the Commonwealth proceed with the public-private partnership. However, several issues with LUMA's performance soon arose. Despite repeated notices of concern from P3A, LUMA's deficiencies persisted and even worsened. P3A has sought to address LUMA's shortcomings through the dispute-resolution framework that the parties themselves bargained for. *See id.*

6.      On July 22, 2025, P3A sent a Notice of Dispute ("P3A's Notice of Dispute") to LUMA identifying six issues of dispute (the "Six P3A Disputes") under Article 15 of the T&D OMA. *Id.* The Six P3A Disputes are precisely the type of specialized, technical issues that the T&D OMA directs into the expert-driven Technical Dispute Resolution Process. *See* T&D OMA §§ 15.3(i) (defining Technical Disputes), 15.4 (explaining Technical Dispute Resolution Process). LUMA, however, has blocked that process at every turn—rejecting P3A's Technical Dispute designation, resisting good-faith negotiations, and refusing to exchange candidates for an Independent Expert.

7.      On July 25, 2025, LUMA responded with a Notice of Dispute of its own. LUMA acknowledged that it was prepared to proceed with the "appropriate Dispute Resolution Procedure," but that the Parties first must resolve their dispute as to whether and which of the Six

6

P3A Disputes should be classified as "Disputes" or "Technical Disputes" under the T&D OMA,

Complaint, Ex. C, in LUMA's words, the "<u>Threshold Dispute</u>," Complaint ¶ 4.

       8.      On August 25, 2025, LUMA filed a complaint ("<u>Complaint</u>") against PREPA and

P3A in the Title III Court alleging that the Defendants breached the T&D OMA by refusing to

participate in mediation of the Threshold Dispute [Dkt. No. 1]. Count I of the Complaint asserts a

run-of-the-mill breach of contract claim and Count III asks the Court to find that the Six P3A

Disputes are not "Technical Disputes" but rather "Disputes" under the T&D OMA. Meanwhile,

Count II sets out a purely procedural request: it asks the Court only to determine whether the

"Threshold Dispute over the classification of the issues raised in P3A's July 22, 2025 letter is a

Dispute subject to the dispute-resolution procedures in Section 15.5 and 15.6." In other words,

Count II asks the Court to compel mediation over whether the Six P3A Disputes should be resolved

before an Independent Expert or a mediator. Count II concerns purely the appropriate forum, not

the underlying disputes themselves.

       9.      Simultaneously with the Complaint, LUMA filed the Motion. Through the Motion,

LUMA asks the Court to (a) enter provisional relief enjoining the Defendants from initiating or

continuing the Technical Dispute Resolution Process under Section 15.4 of the T&D OMA with

respect to the issues in P3A's Notice of Dispute until the Threshold Dispute is decided by

agreement or through the appropriate dispute-resolution process and (b) order the Defendants to

mediate the Threshold Dispute under Section 15.5 of the T&D OMA. Like Count II, by asking the

Court to stop the Defendants from pursuing the Technical Dispute Resolution Process and to make

the Defendants mediate the Threshold Dispute, the Motion asks the Court to resolve the narrow,

procedural question of *where* the Threshold Dispute should be decided under the T&D OMA.

## LEGAL ARGUMENT

### I.   THE COURT LACKS SUBJECT-MATTER JURISDICTION.

10.     It is a bedrock principle of federal law that a court must satisfy itself that it has jurisdiction to hear a matter before it can consider the merits of a case. "Without jurisdiction the court cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868); *accord Morales Felicano v. Rullan*, 303 F.3d 1, 6 (1st Cir. 2002). This principle holds true for courts considering preliminary injunctions. "If [it] becomes apparent to the district court upon review of the plaintiff's motion for preliminary injunction [that the court lacks jurisdiction], the court cannot consider the merits of the preliminary injunction motion and should dismiss the claim altogether." *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 121 (2d Cir. 2025). Review of a preliminary injunction includes not only the decision whether to grant it, but also whether there are any jurisdictional or substantive barriers to the case proceeding, and if so, whether the case should be dismissed. *Munaf v. Geren*, 553 U.S. 674, 691 (2008).[7]

11.     Under PROMESA Section 306(a)(2), the Title III Court's subject-matter jurisdiction includes only matters "arising under" PROMESA's Title III bankruptcy-like provisions or matters "arising in" or "related to" cases under Title III. This language substantially mirrors the bankruptcy courts' jurisdictional grant under 28 U.S.C. § 1334. *Compare* PROMESA § 306(a)(2) ("The district courts shall have . . . original but not exclusive jurisdiction of all civil proceedings arising under this title, or arising in or related to cases under this title.") *with* 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.").

---

[7] If the Court does not dismiss the case in deciding the jurisdictional issues identified in this opposition, P3A intends to file a motion to dismiss the merits of the Adversary Proceeding on behalf of itself and PREPA.

12. The Court must deny LUMA's request for a preliminary injunction and dismiss the Complaint because it does not have jurisdiction over the underlying claim—Count II of the Complaint. *See DiNapoli v. DiNapoli*, 1995 WL 555740, at *2 (S.D.N.Y. Sept. 19, 1995) (denying requests for temporary restraining order and preliminary injunction for lack of subject-matter jurisdiction) (Sotomayor, J.). Count II asks the Court to issue a declaratory judgment that (i) the T&D OMA is a valid and binding contract between the parties; (ii) Article 15 of the T&D OMA governs the resolution of disputes between the parties; and (iii) the parties' Threshold Dispute over the classification of the issues raised in P3A's Notice of Dispute is a "Dispute" subject to the Dispute Resolution Process in Sections 15.5 and 15.6 of the T&D OMA.[8] The Motion seeks to "enjoin Defendants from initiating or continuing any of the dispute-resolution procedures in Article 15 with respect to issues in P3A's July 22, 2025 Notice of Dispute unless and until the Threshold Dispute is decided[.]" The Motion further asks the Court to "order Defendants to mediate the Threshold Dispute as required by Section 15.5 of the T&D OMA." Motion at 16–17. But the Court does not have subject-matter jurisdiction to provide this relief because it does not fall under the Title III Court's "arising in," "arising under," or "related to" jurisdiction. Nor can the Court exercise supplemental jurisdiction over Count II, because Counts I and III are Commonwealth-law claims with no relation to the bankruptcy estate, and in any event Count II's procedural hurdle predominates over the other counts. And P3A's sovereign immunity and indispensability to this suit prevents the Court from granting LUMA full relief and commands dismissal of the Complaint.

---

[8] LUMA's request for a declaration that the T&D OMA is valid and binding is a throwaway; that issue is not currently ripe for dispute between the parties. It is also audacious that LUMA simultaneously wants such a declaration while undermining the forum selection clause it agreed to in the T&D OMA.

**A.      The Court does not have "arising under" or "arising in" jurisdiction.**

13.      A matter "arises under" the Bankruptcy Code "when the Bankruptcy Code itself creates the cause of action." *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662 (1st Cir. 2017). A matter "arises in" a bankruptcy case if the matter would have no existence outside of the bankruptcy case. *Id.* at 662–63. Neither applies here and LUMA freely concedes this. *See* Complaint ¶¶ 10–14 (arguing only "related to" jurisdiction under 28 U.S.C. § 1331 and PROMESA); Motion § II.A. (arguing only "related to" jurisdiction). There is no "arising under" jurisdiction over any count in the Complaint, much less Count II, because those claims are not created by or determined by PROMESA or the Bankruptcy Code provisions it incorporates; the parties' rights are created by and determined by Commonwealth law and contract. *See Gupta*, 858 F.3d at 662. And Count II does not "arise in" the Title III case because it involves a simple question of contract interpretation, a claim that could arise whether or not a bankruptcy case exists. *See id.* at 664–65 ("[T]here is no 'but for' test for 'arising in' jurisdiction . . . . Instead, the fundamental question is whether the proceeding by its nature, not its particular factual circumstance, could arise only in the context of a bankruptcy case.").

**B.      The Court does not have "related to" jurisdiction.**

14.      A matter is "'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) <u>and</u> which in any way impacts upon the handling and administration of the bankruptcy estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991) (adopting *Pacor*), *abrogated in part on other grounds*, *Conn. Nat'l Bank v. Germain*, 503 U.S. 249

(1992).[9] In other words, a matter is related to a bankruptcy if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Fietz v. Great Western Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor*, 743 F.2d at 984). A court has "related to" jurisdiction if the outcome of the action could conceivably have any effect on the administration of the bankruptcy estate. *See Roman Cath. Diocese of Rockville Centre, New York v. Ark320 Doe (In re Roman Cath. Diocese of Rockville Centre, New York)*, 651 B.R. 622, 639 (Bankr. S.D.N.Y. 2023). But "related to" jurisdiction is not unlimited: "a common issue of fact between the . . . proceeding and the bankruptcy case is *insufficient* to confer 'related to' jurisdiction." *Herrero-Domenech*, Adv. Pro. 22-00050-LTS, at 12 (citing *Torres Cruz*, 631 B.R. at 610).

15.     Here, the Court naturally must decide the Threshold Dispute before it can decide anything else because, before deciding the merits, the Court *first* needs to decide what is the proper forum and procedure to do so. LUMA does not contest that. In fact, it specifically pleaded that "in order for the Parties to know which dispute-resolution path they must follow, there must *first* be a determination whether a particular dispute is actually a Technical Dispute or a Dispute." Complaint ¶ 4 (emphasis added); *see* Complaint ¶ 8 (describing the Threshold Dispute as a "key threshold issue" that "*must* be resolved before the Parties can move forward pursuant to the terms of the T&D OMA" (emphasis in original)).

16.     The Threshold Dispute is therefore a "precursor" dispute whose outcome will merely dictate whether the disputes identified in the Complaint will be addressed in one of three

---

[9] Under PROMESA § 301(c)(5), references to "bankruptcy estate" should be read as references to the "debtor." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 621 B.R. 289, 299–300 (D.P.R. 2020) ("Section 301(c)(5) of PROMESA is therefore properly read as applying not only to incorporated provisions of the Bankruptcy Code that use the specific term 'property of the estate,' but also to provisions [that] . . . contain the term 'estate.'").

contractually stipulated forums: before an Independent Expert if the disputes are classified as "Technical Disputes," or in mediation and, if unsuccessful, in the Commonwealth Court if the disputes are classified as "Disputes." Put differently, the outcome of the Threshold Dispute will merely determine forum and procedure; it will stop short of deciding the merits. Hence, it will have no impact on the bankruptcy estate. *See Work/Family Directions, Inc. v. Children's Discover Ctrs., Inc. (In re Santa Clara Cnty. Child Care Consortium)*, 223 B.R. 40, 49 (B.A.P. 1st Cir. 1998), cited by this Court in *Torres Cruz,* 631 B.R. at 609–10. As the court made clear in *Santa Clara County*, if the outcome of a claim would only operate as a "precursor" to another claim, it is deemed insufficient to confer "related to" jurisdiction upon the bankruptcy court. *Santa Clara Cnty.*, 223 B.R. at 49 (finding no "related to" jurisdiction exists because "[t]he resolution of the state court proceeding will not directly affect the claims litigation in the bankruptcy case; rather, it is only a *precursor* to a potential claim by Work/Family against CDC and is insufficient to confer "related to" jurisdiction upon the bankruptcy court" (emphasis added)).

17.     The relief sought by the Complaint would have no conceivable effect on the administration of PREPA's Title III estate. The Motion—and Count II—involve a simple procedural question: who decides the Threshold Dispute? Count I claims P3A and PREPA breached the T&D OMA by not mediating the Threshold Dispute, and Count III seeks a declaration that the Threshold Dispute is, in fact, a Dispute. But aside from legal fees and expenses, the only specific remedies LUMA seeks are, in essence, to enjoin Defendants from pursuing the Technical Dispute Resolution Process before an Independent Expert and to compel mediation of the Threshold Dispute. Whether the Threshold Dispute is to be mediated or put before an Independent Expert has no bearing on PREPA's ability to negotiate with creditors or to prosecute any plan of adjustment. Indeed, it has no impact on the administration of PREPA's Title III estate—creditors

12

remain in the exact same position they were in before the Complaint and Motion were filed, PREPA retains the same control over the same assets, and PREPA's obligations under the T&D OMA are identical.

18.    LUMA contends that this Court has already determined that it has "related to" jurisdiction over this matter because the Court previously held that LUMA's potential indemnification claim against PREPA under the T&D OMA establishes "related to" jurisdiction. *See* Motion at 11–12 (citing *Herrero-Domenech,* Adv. Pro. 22-00050-LTS, at 12). Not so. As the Puerto Rico bankruptcy court acknowledged, "[w]hether a particular action is 'related to' bankruptcy must be determined on a case-by-case basis." *First Bank P.R. Inc. v. Bert Foti (In re Int'l Home Prods. Inc.)*, 491 B.R. 607, 618 (Bankr. D.P.R. 2013). Indeed "what is 'related to' a proceeding . . . in one context may be unrelated in another." *Bos. Reg'l Med. Ctr., Inc. v. Reynolds (In re Bos. Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 107 (1st Cir. 2005). LUMA asserts that if P3A and PREPA were to prevail in the Technical Dispute Resolution Process, LUMA might assert defenses of Owner Fault, negligence or willful misconduct by P3A and PREPA, and failure of PREPA to perform under the T&D OMA. LUMA argues that those defenses, if successful, may give rise to indemnification claims that could affect the estate, and that this threat of indemnification is enough to confer on the Court "related to" jurisdiction over this matter. But that issue is certainly not at stake in resolving the Threshold Dispute, and it also piles conjecture on top of assumption. Assuming LUMA were to prevail in the Technical Dispute Resolution Process (which P3A does not believe LUMA can), and if LUMA then decides to pursue indemnification claims, the Court can address whether it has jurisdiction over such claims at that time. But actual effects of the issue currently before the Court are far too remote to satisfy *Pacor*. "Jurisdiction is not present where the 'related' controversy is too tangential to the bankruptcy case." *Feltman v.*

*Tri-State Empl'mt Serv., Inc. (In re TS Empl'mt, Inc.)*, 641 B.R. 753, 763 (Bankr. S.D.N.Y. 2022). In other words, a matter only has a conceivable effect on the estate if its impact (if any) on the estate is *direct*. *Triad Guar. Ins. v. Am. Home Mortg. Invs. Corp. (In re Am. Home Mortg. Holding)*, 477 B.R. 517, 529 (Bankr. D. Del. 2012) (citing *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F. 3d 164, 169 (3d Cir. 2009)); *see also* H.R. Rep. No. 95-595, 95th Cong., 2d Sess. 42-52, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6004–13 (related to jurisdiction requires a "significant connection" between the claim and the bankruptcy case). LUMA's threatened indemnification claim (i) is contingent on LUMA asserting certain defenses and a future, uncertain adverse ruling; (ii) would require a separate action to liquidate; and (iii) is, at this stage, entirely unripe. Such contingent possibilities do not create "related to" jurisdiction. *See Am. Home Mortg. Holding*, 477 B.R. at 529; *TS Empl'mt*, 641 B.R. at 763; *Holland Indus., Inc. v. United States (In re Holland Indus., Inc.)*, 103 B.R. 461, 468 (Bankr. S.D.N.Y. 1989) ("[R]elatedness does not lie where the dispute, while 'conceivably' related to the bankruptcy estate, is so only remotely.").

19.     LUMA's reliance on *Herrero-Domenech* is also misplaced because its facts are readily distinguishable from LUMA's suit here. There, putative class members who were commercial and residential customers of PREPA filed third-party tort claims against LUMA seeking $800 million in damages for an island-wide blackout. LUMA sought removal of the action, alleging "related to" jurisdiction based on LUMA's claim that PREPA was required to indemnify it for the potential liability, which had already been quantified at $800 million by the *Herrero-Domenech* plaintiffs. In the circumstances of that case, the Court held that LUMA had established that its claim to indemnification was "not merely speculative" for purposes of alleging related to jurisdiction. *Herrero-Domenech,* Adv. Pro. 22-00050-LTS, at 13–14. LUMA has failed to make

14

such a showing here. Tellingly, there is no quantified loss for which LUMA seeks indemnification. LUMA asserts in the Complaint that it is due an unspecified amount of damages for its breach of contract claim, but provides not even an estimate of damages. This is unsurprising considering that the threat of indemnification is so speculative and so contingent that it cannot meet the *Pacor* standard. The T&D OMA's indemnity provision[10] may not apply at all to claims between the parties. *See Abakan, Inc. v. Uptick Cap., LLC*, 943 F. Supp. 2d 410, 415 (S.D.N.Y. 2013) ("Where a general indemnification provision does not explicitly provide for indemnification for suits between the parties to the contract, a claim for such indemnification must fail.") Even if it did, for an indemnity obligation to arise here, LUMA must lose on one or more of its disputes and, in addition, prevail on Owner Fault (or another contractual theory) that would shift LUMA's losses back to PREPA. Only if both contingencies occur (neither of which are before the Court) could a plausible argument for indemnity obligation arise. Such remote, layered speculation does not satisfy *Pacor*'s "conceivable effect" test. *See Holland Indus.*, 103 B.R. at 468 (finding that a claim did not have a "conceivable effect" on the estate because the connection to the estate was only incidental).

20.     Finding jurisdiction here would convert every post-petition contract-administration dispute into a bankruptcy matter, so long as a party utters the talismanic phrase "this might affect

---

[10] Under section 18.2(a)(ii) of the T&D OMA, PREPA has an indemnification obligation to LUMA for "any and all Losses" arising or resulting from, among other things, a failure by PREPA or P3A to perform their obligations under the T&D OMA or resulting from any "Owner Fault." "Owner Fault" is defined in section 1.1. of the T&D OMA to mean breaches, failures to comply or nonperformance under the T&D OMA, or negligence, tort, or willful misconduct by PREPA or P3A which has or could be "reasonably expected to have, a material adverse effect" on LUMA's performance under the T&D OMA. "Losses" is defined as "any and all actual out-of-pocket (i) losses, damages, costs, expenses, liabilities, interest, deficiencies, awards, judgments, fines, assessments, penalties, forfeitures, obligations, deposits, Taxes, costs, offsets, expenses or other charges of any kind, including . . . costs of enforcing any right to indemnification hereunder . . . and (ii) settlements . . . , the amount of which either has been agreed by Operator and Administrator or is below a specified amount to be agreed by Operator and Administrator from time to time." T&D OMA § 1.1. LUMA is required to give PREPA written notice of any claims against it for which it is entitled to indemnification under section 18.2(a). T&D OMA § 18.2(c).

the estate." That result would swallow the careful federal-state balance that PROMESA preserved and would invite forum shopping. The Court should find it does not have "related to" jurisdiction over this matter and dismiss the case for lack of subject-matter jurisdiction.

### C.        The Court cannot exercise supplemental jurisdiction over Count II.

21.        District courts in their discretion may exercise supplemental jurisdiction over state law claims when those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 215 F.3d 195, 206 (1st Cir. 2000). Courts may refuse to exercise supplemental jurisdiction if, among other reasons, "the [state law] claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). That is the case here: Count I asserts a breach of contract claim; Count II asks the Court to determine in what forum the Threshold Dispute must be resolved under the T&D OMA; and Count III asks the Court to find that the Six P3A Disputes are "Disputes" under the T&D OMA. Counts I and III do not fall under the Court's original jurisdiction any more than Count II does, because they are state law claims that seek procedural remedies with no effect on PREPA's bankruptcy estate. *See supra* § I.B. Assuming *arguendo* that the Court has original jurisdiction over Counts I and III, the state law claim asserted in Count II substantially predominates over Counts I and III. That is because before the Court can determine Counts I and III, the Court first must determine whether the Threshold Dispute must be mediated or put before an Independent Expert—the issue LUMA asks the Court to resolve in Count II and the Motion. The Court thus cannot exercise supplemental jurisdiction over Count II, and it must be dismissed.

> **D.**    **The Court cannot enjoin or issue any other relief against P3A because it has sovereign immunity under the Eleventh Amendment and cannot be sued in the Title III Court.**

22.    The Eleventh Amendment provides that each state is a sovereign entity and, therefore, not amenable to suit without its consent. *See, e.g.*, U.S. Const. Am. XII; *see also Clemente Props., Inc. v. Pierluisi Urrutia*, 693 F. Supp. 3d 215, 234 (D.P.R. 2023) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)). The Commonwealth unquestionably enjoys sovereign immunity. *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 61 (1st Cir. 2003) (finding the Commonwealth of Puerto Rico has sovereign immunity under the Eleventh Amendment). But Eleventh Amendment immunity also extends to arms of the state like P3A. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 (1997) (stating that courts focus on "on the 'nature of the entity created by state law' to determine whether it should 'be treated as an arm of the State'"); *Grajales v. P.R. Ports Auth.*, 831 F.3d 11, 13 (1st Cir. 2016) ("[T]he only question that we must decide is whether PRPA may claim [sovereign immunity]. . . . the answer turns on whether PRPA's relationship to the Commonwealth is such that PRPA is an 'arm of the Commonwealth.'").

23.    To determine whether an entity is an arm of the state, the First Circuit asks two questions: (i) has the state structured the entity in such a way that it shares the state's sovereignty and (ii) what is the "risk that [ ] damages will be paid from the public treasury[?]" *Grajales*, 831 F.3d at 17–18 (citations omitted). If the answer to the first question is that the state clearly structured the entity to share its sovereignty, then the entity is an arm of the state and the analysis ends. *Id.* at 18. But if the structural indicators "point in different directions," then courts evaluate the second question. *Id.*

24.    The Court need not get to the second question here. The Commonwealth has structured P3A to share its sovereignty. To determine whether an entity has been structured to

17

share the state's sovereignty, courts consider (1) the characterization of the entity in its enabling act; (2) the nature of the functions the entity carries out; (3) the fiscal relationship of the entity to the state; and (4) the state's control over the entity. *See Grajales*, 831 F.3d at 21–29; *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 44 (1994) (setting forth structural indicators of shared sovereignty). These factors weigh in favor of P3A's sovereign immunity.

25.    P3A was created as a public corporation, originally dependent on and attached to the Government Development Bank of Puerto Rico ("GDB"). *See* Act 29, Art. 5. The GDB is an arm of the state of Puerto Rico. *See Reyes-Garay v. Integrand Assurance Co.*, 818 F. Supp. 2d 414, 427 (D.P.R. 2011) (finding that the Public Housing Authority, also ascribed to GDB, was an arm of the state). The Legislature later substituted AAFAF, which was created to substitute and take over GDB's fiscal responsibilities pursuant to Act 2 of January 18, 2017, the Puerto Rico Fiscal Agency and Financial Advisory Authority Act, for GDB as the government entity to which P3A directly reports, Act 29 § 5. Nothing in the P3A Enabling Act suggests that it is "independent and separate from any other agency or instrumentality of the Government[.]" *Grajales*, 831 F.3d at 21. Although P3A is described as a public corporation in the P3A Enabling Act, it has the stated public purpose "to improve the services rendered by the Government, to facilitate the development, construction, operation and maintenance of infrastructure, and to disencumber Commonwealth financial resources . . . ." Act 29, Statement of Motives. And while P3A can sue and be sued, Act 29 § 6(a)(vii), that alone is insufficient to be considered a waiver of sovereign immunity. *See, e.g.*, *Riefkohl v. Alvarado*, 749 F. Supp. 374, 375 (D.P.R. 1990) ("At first blush it would seem that consent to sue and be sued 'in all courts' unequivocally includes federal courts. Yet, in light of the strict requirements articulated by the Supreme Court, there is room to argue that, on its face, such statute is ambiguous.").

18

26.     P3A was also tasked with uniquely governmental functions: P3A is the sole government entity authorized to and charged with implementing the Commonwealth's public policy of furthering the economic development and maintenance of public infrastructure in Puerto Rico. *See* Act 29 § 3.

27.     The P3A Enabling Act also reflects that the fiscal relationship of P3A to the Commonwealth is such that it is an arm of the state. P3A is authorized to receive federal public funds, with the Commonwealth responsible for compliance with any requirement, condition, or term for such federal funds. *See* Act 29 § 11. The Commonwealth is also responsible for indemnities P3A owes to P3A's officers and employees if P3A lacks funds to satisfy them. *See* Act 29 § 16. And, P3A is exempt from state taxes as to any and all property, operations, activities, or income. *See* Act 29 § 21; *see also Irizarry-Mora v. U.P.R.*, 647 F.3d 9, 14 (1st Cir. 2011) (noting as part of the factors weighing in favor of an arm-of-the-state status for the U.P.R. that it was exempt from the payment of taxes); *Metcalf & Eddy v. P.R. Aqueduct & Sewer Auth.*, 991 F.2d 935, 940 (1st Cir. 1993) (noting that whether the agency's property is subject to state taxation is a factor to consider in the Eleventh Amendment analysis).

28.     The structure of P3A's Board of Directors shows that the Government exerts control over P3A as an arm of the state. The Governor's appointees comprise a majority of P3A's Board of Directors. Its members include the Executive Director of AAFAF, the Secretary of the Treasury, and the President of the Planning Board. *See* Act 29 § 5(b). The chair of the Board of Directors is the Executive Director of AAFAF. *See id.* The additional two members of the Authority's Board of Directors are selected by the Governor from a slate of three candidates suggested by each of the Presidents of the Puerto Rico House of Representatives and Senate. *See Irizarry-Mora*, 647 F.3d at 15 (explaining that the fact that ten of thirteen members of the U.P.R.'s

governing board were appointed by the governor with the consent of the Puerto Rico Senate served as an indicator that the university shared Puerto Rico's sovereign immunity); *Great River Indus., Inc. v. Pub. Serv. Comm'n of P.R.*, 131 F. Supp. 2d 265, 271 (D.P.R. 2001) (finding the fact that "the Governor of Puerto Rico appoints [the Public Service Commission's] seven commissioners" a factor in favor of immunity).

29. Each of the structural factors establishes the Commonwealth's intent for P3A to share its sovereign immunity, so the Court can stop there. But even the second question weighs in favor of finding sovereign immunity. The budget for fiscal year 2025 approved by the Oversight Board shows that $28 million were appropriated from the General Fund of the State Treasury of Puerto Rico to cover P3A's expenses. *See* FOMB letter to the Governor at 69–70 (June 30, 2024), https://drive.google.com/file/d/1Z6mwP9EnDvxpDDXCBpD5w6Ft2nkVn8Br/view [https://perma.cc/FN92-FVMQ]. There can be no doubt, therefore, that a lawsuit and any potential liability of P3A puts the state treasury at risk, and demands that the Court find P3A has sovereign immunity. *See Great River*, 131 F. Supp. 2d at 270 (citing *Feeney v. Port Auth. Trans-Hudson Corp.*, 873 F.2d 628, 631 (2nd Cir. 1989), *aff'd* 495 U.S. 299 (1990)).

30. Where a court has no jurisdiction over a sovereign entity, no relief can be granted against that entity and dismissal is proper. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). P3A shares Puerto Rico's Eleventh Amendment immunity and thus no action can be entertained by this Court against it without its consent, which it has not provided. To the contrary, P3A only waived sovereign immunity to be sued by LUMA in Commonwealth Court for claims arising out of the T&D OMA.[11] T&D OMA § 15.6(a). LUMA asks the Court to enjoin the

---

[11] "A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts[.]" *Feeney*, 495 U.S. at 306.

"Defendants from invoking the dispute-resolution process for Technical Dispute in Section 15.4 of T&D OMA with respect to the Disputes set forth in P3A's July 22, 2025 Notice of Dispute until the Threshold Dispute about the proper classification of the issues from P3A's July 22, 2025 Notice of Dispute has been resolved." But it cannot grant this relief because it cannot enjoin P3A based on its sovereign immunity. The Court should thus deny LUMA's Motion and dismiss this matter against P3A on the basis of sovereign immunity. And since P3A is the Administrator of the T&D OMA, the Court should also dismiss the matter as to PREPA. *See infra* § II.H.

## II. THE COURT SHOULD ABSTAIN FROM ADJUDICATING THE MOTION.

31. Should the Court determine it has subject-matter jurisdiction, the Court should abstain from this matter and dismiss accordingly.[12] PROMESA Section 309 provides that "[n]othing in this title prevents a district court in the interests of justice from abstaining from hearing a particular proceeding arising in or related to a case under this title." This provision "tracks with the language of" 28 U.S.C § 1334(c)(1) which provides for permissive abstention. *Asociación de Salud Primaria de P.R., Inc. v. P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp. 3d 667, 675 (D.P.R. 2018). Under section 1334(c)(1), a district court may "in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). To determine whether to abstain, the Court considers a non-exhaustive list of factors, focused on efficiency, comity for state law, and discouraging forum shopping. *Asociación de Salud Primaria*, 330 F. Supp. 3d at 682. The inquiry is a holistic one; the list is not exclusive, and no single factor is controlling. *See, e.g.*, *In re Roman Cath. Bishop*

---

[12] The Oversight Board has not consented to the relief LUMA seeks. The Court should therefore consider PROMESA § 305 as an additional ground on which to abstain from exercising jurisdiction, unless in the future the Oversight Board expressly consents to the relief sought in the Complaint.

*of S.D.*, 374 B.R. 756, 761–62 (Bankr. S.D. Cal. 2007) ("While these factors assist a court's remand decision, they do not control it. The standard remains 'any equitable ground.'").

32. An analysis of the factors here overwhelmingly supports permissive abstention just as this Court has in prior cases such as *Herrero-Domenech*.[13] In *Herrero-Domenech*, despite finding that LUMA's "plausible" claim to indemnification was at least conceivably related to PREPA's Title III case, Judge Dein explained that Commonwealth-law contract claims that LUMA "breached the terms of the T&D OMA . . . have no bearing on the issues presented in PREPA's Title III case." *Herrero-Domenech*, Adv. Pro. 22-00050-LTS, at 17. Judge Swain agreed, noting that "LUMA has not proffered any reason why the forum in which the Removed Action is adjudicated will be significant to the administration of PREPA's Title III Case." *Mem. Order Overruling Obj. & Adopting R. & R.*, *Herrero-Domenech*, Adv. Pro. 22-00050-LTS, at 6, Dkt. No. 27 (citing *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co*., No. CIV.A. 10-11376-NMG, 2010 WL 6580503, at *7 (D. Mass. Dec. 28, 2010) (noting that, although a "judgment against the debtor would impact the bankruptcy estate . . . , that impact is not affected by the choice of forum"), *report and recommendation adopted*, 813 F. Supp. 2d 242 (D. Mass. 2011)). So too here: LUMA seeks only to impose its preferred forum on P3A and PREPA. Nothing about that choice of forum affects PREPA's Title III estate.

A. **LUMA is blatantly forum shopping.**

33. LUMA is nakedly forum shopping, and that strongly favors abstention given how tenuous the case for "related to" jurisdiction is and the sovereign immunity considerations here.

---

[13] The other factors are less relevant: (1) the basic issues of contract interpretation asserted in Count II and the Motion are neither difficult nor unsettled under Commonwealth law, so this factor is neutral; (2) the parties waived their rights to a jury trial in the T&D OMA, and either the Title III Court or a Commonwealth court could conduct a bench trial for this matter, so this factor is neutral; and (3) there are no core matters to sever from state law claims here, which makes this factor neutral to slightly in favor of abstention. *See Asociación de Salud Primaria*, 330 F. Supp. 3d at 682.

This is self-evident: in the T&D OMA, LUMA and P3A (on its own behalf and on PREPA's behalf) expressly agreed that "to resolve any and all claims arising out of this Agreement (other than any Technical Dispute), they may file a civil action, including actions in equity, *in the Commonwealth Court*." T&D OMA § 15.6(a) (emphasis added).[14] Indeed, the parties "each irrevocably consent[ed] to the exclusive jurisdiction of [Commonwealth] courts in any such actions or proceedings, waive[d] any objection [they] may have to the jurisdiction of any such action or proceeding, as well as objections or defenses based on sovereign immunity" and agreed to seek emergency or provisional remedies in the Commonwealth Court. T&D OMA §§ 15.6(a), 15.8. Moreover, the T&D OMA was wholly negotiated and executed *after* PREPA's Title III case was already underway, and the parties even negotiated, postpetition, a supplemental agreement dealing with Title III issues. *See KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 236 (S.D.N.Y. 2019) (transferring venue to the bankruptcy court where the interest in enforcing the parties' choice of forum was strong because the parties agreed to litigate in New York courts under the postpetition DIP agreement). Yet the parties only provided for Title III Court jurisdiction for the limited purpose of approving certain administrative expenses against PREPA in favor of LUMA. *See* T&D OMA § 4.1; T&D OMA Supp. Agreement § 2.3(b).[15] If LUMA wanted the Title III Court as a forum for disputes under the T&D OMA, it could have bargained for it; but it didn't. Instead, it agreed to the Commonwealth Court as the exclusive forum.

---

[14] Section 15.8 of the T&D OMA provides: "Notwithstanding any other provision in this Agreement, no Party shall be precluded from initiating a proceeding in the Commonwealth Court for the purpose of obtaining any emergency or provisional remedy to protect its rights that may be necessary and that is not otherwise available under this Agreement, including temporary and preliminary injunctive relief, restraining orders and other remedies to avoid imminent irreparable harm, provide uninterrupted electrical and other services or preserve the status quo pending the conclusion of such negotiation, mediation or litigation."

[15] The T&D OMA Supplemental Terms Agreement is included as part of the T&D OMA attached to the Complaint as Exhibit A.

34.     This Court should hold LUMA to its bargained-for terms. The forum selection clauses in the T&D OMA were "made in an arms-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the [Court]." *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 52 (1st Cir. 1999) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)); *accord Diaz Contracting, Inc. v. Nanco Contracting Corp., (In re Diaz Contracting, Inc.)*, 817 F.2d 1047, 1050 (3d Cir. 1987). "While courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue, and in such a case the plaintiff bears the burden of demonstrating why it should not be bound by its contractual choice of forum." *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517 (E.D. Pa. 2010), *order amended on reconsideration*, No. 10-1054, 2011 WL 204738 (E.D. Pa. Jan. 21, 2011). "Courts may not rewrite the parties' agreements and compel arbitration of their dispute in a forum which is not one of those enumerated in an arbitration agreement's forum selection clause." *KKW Enters.*, 184 F.3d at 52. The parties freely negotiated the forum selection clauses in the T&D OMA. In Section 15.6, they specifically designated the Commonwealth Court as the proper forum for Disputes and claims arising from the T&D OMA, while in Section 15.5 they selected the Independent Expert to resolve Technical Disputes, and in Section 4.1 they chose the Title III Court to approve certain administrative expenses. If the parties intended this Court to be the proper forum for this matter, they would have said so in the T&D OMA. While forum selection clauses by themselves do not mandate abstention, courts consider them in determining whether to abstain. *See, e.g.*, *Platte River Bottom, LLC v. Advantage Bank (In re Platte River Bottom, LLC)*, 2015 WL 3897453, at *7 n. 5 (Bankr. D. Or. June 23, 2015) (taking into account forum selection clause in determining whether

to exercise jurisdiction). Here, the presence of a valid, enforceable forum selection clause electing the Commonwealth Court to resolve the issues raised in the Complaint evidences a "the strong suggestion of a forum shopping motive" which demonstrates "that abstention is required and serves the interests of comity and respect for state law." *Id.* at *14.

35.     LUMA attempts to circumvent the forum selection clause that the parties freely and knowingly negotiated by arguing that the Title III Court has "related to" jurisdiction over the Complaint (as LUMA acknowledges if the Court has subject-matter jurisdiction, it has *only* "related to" jurisdiction.) *See* Complaint ¶ 10. This concession undermines LUMA's effort to evade the postpetition forum selection clause. A "related to" matter is synonymous with a non-core proceeding. *See* 28 U.S.C. § 157(b); *Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 512 (S.D.N.Y. 2015) ("As the Second Circuit has explained, a proceeding that "arises under" or "arises in" Title 11 is a "core" bankruptcy proceeding, but a proceeding that is merely "related to" a Title 11 case is not—and [is] a non-core proceeding[.]"). Deference to a forum selection clause is so strong that where claims are non-core, courts will enforce a contractual forum selection clause. *See In re Exide Techs.*, 544 F.3d 196, 218 & n.15 (3d Cir. 2008) (finding non-core claims would be subject to enforcement of a contractual forum selection clause because "[a] forum-selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement demonstrates that enforcement of the clause would violate a strong public policy of the forum" and such rule applies in non-core chapter 11 cases). Thus, even if the Court has "related to"

jurisdiction, the matter is non-core and the Court should enforce the forum selection clause in the

T&D OMA requiring this dispute to be resolved by the Commonwealth Court.[16]

36.     Given this agreement, LUMA cannot claim prejudice by having this matter heard

in the Commonwealth Court. LUMA has already consented to that forum. LUMA has failed to

explain why the Court should set aside the parties' agreement to litigate disputes under the T&D

OMA in the Commonwealth Court. In fact, LUMA does not even mention the forum selection

clauses in its Complaint or Motion. Because LUMA offers no reason it should not be held to its

own bargained-for expectations, the Court should enforce the forum selection clause and decline

to exercise jurisdiction. This factor weighs strongly in favor of abstention.

**B.     State law issues predominate over bankruptcy issues.**

37.     Puerto Rico law predominates over bankruptcy law in contract disputes. *See LM

Waste Serv. Corp. v. Municipio de Juana Diaz (In re LM Waste Serv. Corp.)*, 562 B.R. 845, 852

(Bankr. D.P.R. 2016) ("Puerto Rico law predominates over bankruptcy law in contractual"

actions). In fact, as in *Herrero-Domenech,* which this Court remanded to Commonwealth Court,

LUMA "brings no claims under federal law, PROMESA, or the Bankruptcy Code[.]" *Herrero-

Domenech,* Adv. Pro. 22-00050-LTS, at 15. Section 20.15 of the T&D OMA also provides that all

disputes arising out of or related to the T&D OMA "shall be interpreted, construed and governed

by and in accordance with, and enforced pursuant to, the internal laws of the Commonwealth . . .

---

[16] Ultimately, LUMA seems to want all disputes decided by this Court. *See* Complaint ¶¶ 12–13. That position is
misguided for all the reasons stated here, but also because it ignores that, if the Commonwealth court decides that the
disputes are in fact "Technical Disputes," then the matter must be submitted to the Independent Expert. *See Goldsmith
v. Macri Assocs., Inc. (In re E & G Waterworks, LLC)*, 571 B.R. 500, 505 (Bankr. D. Mass. 2017) ("[T]here is general
agreement in the case law that bankruptcy courts must compel the arbitration of non-core bankruptcy proceedings");
*MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) ("Bankruptcy courts generally do not have discretion
to refuse to compel arbitration of 'non-core' bankruptcy matters, or matters that are simply 'related to' bankruptcy
cases.").

except where the federal supremacy clause requires otherwise." As LUMA conceded when it agreed in the T&D OMA to litigate "Disputes" and issues arising under the T&D OMA before the Commonwealth Court, the Commonwealth Court is more than competent to adjudicate Count II, the Motion and indeed the entire Complaint. This factor also weighs in favor of abstention.

### C.        The proceeding is unrelated to and remote from the main bankruptcy case.

38.       For the same reasons P3A argues the Court lacks subject-matter jurisdiction, *see supra* § I.B, this factor strongly favors abstention. "Where issues are far removed or peripheral, and do not involve issues central to the restructuring, abstention is warranted in bankruptcy cases." *Asociación de Salud Primaria*, 330 F. Supp. 3d at 683. "The central focus of PREPA's Title III case is the restructuring and treatment of PREPA's pre-petition obligations." *Herrero-Domenech,* Adv. Pro. 22-00050-LTS, at 17. Whatever a court decides with respect to the relief requested in the Motion and the Complaint, those issues are far afield from restructuring and debtor-creditor relations. This case does not call upon the Court to adjudicate PREPA's obligations to creditors or interpret PROMESA or bankruptcy law. *See Herrero-Domenech,* Adv. Pro. 22-00050-LTS, at 17.

### D.        The proceeding is not a "core" proceeding.

39.       LUMA does not assert that the claims in the Complaint are core proceedings, nor can it. It contends only that the Court has "related to" jurisdiction, which necessarily concedes that the claims are non-core. *See supra* at ¶ 35. The claims do not concern the administration of the bankruptcy estate or fall under any of the other categories set forth in 28 U.S.C. § 157. Further, "[t]he claims here are not 'core proceedings' because they are not causes of action that are created or determined by Bankruptcy Code provisions, nor are they based upon rights which cannot be pursued outside of the bankruptcy context." *Steele v. Ocwen Fed. Bank (In re Steele)*, 258 B.R. 319, 322 (Bankr. D.N.H. 2001). This factor weighs in favor of abstention.

**E.      There is no jurisdictional basis other than 28 U.S.C. § 1334.**

40.      There would be no jurisdictional basis for the Court to address this matter if not for the Title III case. The only asserted jurisdictional basis is "related to" jurisdiction under PROMESA section 306(a)(2), which is substantially similar to 28 U.S.C. § 1334.

**F.      The proceeding does not have an effect on the efficient administration of the estate.**

41.      Allowing the Commonwealth Court to hear this matter promotes the efficient administration of the estate. As this Court has stated, the Court's prior rulings and familiarity with the T&D OMA do not bear on whether efficient administration would be fostered by the Court deciding this particular matter. "As such, this Court's previous work related to the T&D OMA is not a guide for the instant action and will not reduce the efforts necessary to resolve the [matter]." *Herrero-Domenech,* Adv. Pro. 22-00050-LTS, at 18. Further, remaining before this Court will only add yet another adversary proceeding to be resolved in the case and do nothing to foster an efficient administration of the PREPA's Title III case. Abstention would further efficient administration by allowing another appropriate, competent forum to resolve the matter. *See id.* (remanding case to the Commonwealth Court despite the possibility of a large indemnity claim because allowing the Commonwealth Court to resolve the dispute allowed the Court to focus on core issues in PREPA's restructuring).

42.      P3A's sovereign immunity further complicates this matter. By abstaining, the Court avoids expending judicial resources determining whether P3A has sovereign immunity or dealing with the ramifications of that issue. The issue need not ever be addressed if the Court abstains because P3A has already waived its objections and defenses based on sovereign immunity before Commonwealth Court. *See* T&D OMA § 15.6(a). But here, P3A can, and does, object to the relief

sought on the basis of sovereign immunity. *See supra* at § I.D. This factor weighs in favor of abstention.

### G.      The proceeding would substantially burden the Court's docket.

43.      This matter would place a substantial burden on the Title III Court's already full docket when the issues here could be just as easily resolved by the Commonwealth Court. There are several pending adversary proceedings in the Title III case over which the Court presides and many more substantial issues within the Title III case itself to which the Court is dedicating its resources. The Court need not be burdened by this matter when there is another more appropriate forum to resolve it. This factor weighs in favor of abstention.

### H.      P3A is a nondebtor, indispensable party.

44.      While one of the defendants is the Debtor, the other defendant—P3A—is not a debtor and neither is the plaintiff, LUMA. PREPA is "merely one party in the multi-party dispute . . . . The overwhelming presence of non-debtor parties favors abstention." *In re Solutia, Inc.*, 653 B.R. 99, 127 (Bankr. S.D.N.Y. 2023). And all three parties contracted to have the Commonwealth Court decide this matter. Further, as explained at length above, this matter does not affect the Title III case or PREPA's ability to administer its estate.

45.      But this factor is more compelling for another reason: A nondebtor party, P3A, is entitled to sovereign immunity under the Eleventh Amendment to the U.S. Constitution and cannot be sued in the Title III Court. Without jurisdiction over P3A, the Court must dismiss all claims against P3A. However, P3A is an indispensable party to this case without whose presence this Court cannot continue to entertain the claims advanced by LUMA nor grant complete relief. *See* Fed. R. Civ. P. 19(a)–(b). Under the T&D OMA, P3A, as the Administrator, is the party with authority to raise disputes against LUMA, regardless of whether they are deemed "Technical Disputes" or merely "Disputes." *See, e.g.*, T&D OMA §§ 6.2(a)–(b), 15.1. Therefore, the

resolution of the issues raised by LUMA in the Complaint will directly impact P3A's authority, role and powers as Administrator under the T&D OMA. And the Complaint seeks "injunctive relief prohibiting Defendants from invoking the dispute-resolution process for Technical Dispute[s] in Section 15.4 of T&D OMA with respect to the Disputes set forth in P3A's July 22, 2025 Notice of Dispute until the Threshold Dispute about the proper classification of the issues from P3A's July 22, 2025 Notice of Dispute has been resolved." Complaint at 23. Without also granting an injunction against P3A, the Court cannot grant the complete relief LUMA seeks because, absent an injunction, P3A can and will pursue the proper dispute resolution process under T&D OMA while this case plays out with PREPA as the remaining defendant. Therefore, the case cannot continue without P3A. *See, e.g.*, *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461 (D. Mass. 2011) (dismissing a case when the joinder of a state, who was deemed an indispensable party, was unfeasible due to sovereign immunity); *see also Deschutes Rivera All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) (holding that in a case against a private third party and an Indian tribe—which enjoys sovereign immunity just as the Commonwealth does—the latter, even though deemed an indispensable party, could not be sued in federal court absent an abrogation of sovereign immunity and, thus, dismissing the case in its entirety due to the failure and unfeasibility of joining such an indispensable party). Because P3A is an indispensable, nondebtor party, the Court should abstain or dismiss the case in full. Thus, this factor weighs in favor of abstention.

I.  **There is no related proceeding commenced in state court or other non-bankruptcy court because LUMA refuses to adhere to the T&D OMA.**

46. There is no pending related proceeding, but only because LUMA refuses to abide by its own selection of the Commonwealth Court as a forum for this exact dispute. The lack of a pending related proceeding is only dispositive in mandatory abstention, but it is but one of many

factors considered in permissive abstention. *See Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins (In re Integrated Health Servs., Inc.)*, 291 B.R. 615, 621 (Bankr. D. Del. 2003) (stating that the court was not persuaded by argument that because there was no pending related proceeding that the court was most familiar with the issues in the adversary proceeding and it would be a waste of judicial resources to require the suit to filed again in another forum). "[C]ourts have not frequently afforded this factor a significant amount of weight on its own." *N.J. Dep't of Env't Prot. v. Occidental Chem. Corp. (In re Maxus Energy Corp.)*, 560 B.R. 111, 126 (Bankr. D. Del. 2016). The Court should not permit LUMA to use its own forum-shopping as a factor against abstention, and should determine that this factor, too, weighs in favor of abstention.

47.     Accordingly, the abstention factors weigh disproportionately in favor of abstention. The Court should exercise its discretion to abstain from hearing this matter because there are more appropriate, contractually-agreed-upon forums to resolve the matter.

## CONCLUSION

For the reasons set forth herein, the Court should deny the Motion and dismiss the Complaint for lack of subject-matter jurisdiction.[17]

Dated: September 16, 2025                    Respectfully submitted,
San Juan, Puerto Rico

**O'MELVENY & MYERS LLP**                    **MARINI PIETRANTONI MUÑIZ LLC**

*s/ Peter Friedman*                          */s/ Manuel A. Pietrantoni*
Peter Friedman                               Manuel A. Pietrantoni
(Admitted *Pro Hac Vice*)                    USDC No. 219805
Maria J. DiConza                             Ignacio J. Labarca-Morales
(Admitted *Pro Hac Vice*)                    USDC No. 303307
Gabriel L. Olivera                           250 Ponce de León Ave., Suite 900

---

[17] P3A reserves all rights to assert any defenses against any remaining claims in the Complaint at the appropriate time.

31

USDC No. 303314
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
        mdiconza@omm.com
        golivera@omm.com

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority acting on
behalf of the Puerto Rico Public Private
Partnership Authority*

San Juan, Puerto Rico 00918
Telephone: (787) 705-2171
Facsimile: (787) 936-7494
Email: mpietrantoni@mpmlawpr.com
        ilabarca@mpmlawpr.com

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority acting on
behalf of the Puerto Rico Public Private
Partnership Authority*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Manuel A. Pietrantoni*
Manuel A. Pietrantoni
