UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO et al., | (Jointly Administered) |
| Debtors.[1] | |

-----------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | No. 17 BK 4780-LTS |
| PUERTO RICO ELECTRIC POWER AUTHORITY, | |
| Debtor. | |

-----------------------------------------------------------------x

| | |
|---|---|
| LUMA ENERGY, LLC and LUMA ENERGY SERVCO, LLC, | |
| Plaintiffs, | Adv. Proc. No. 25-00043-LTS in 17 BK 4780-LTS |

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (v) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).  On October 30, 2024, the Title III case for the Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) was closed.

-v-

PUERTO RICO ELECTRIC POWER
AUTHORITY and PUERTO RICO PUBLIC-
PRIVATE PARTNERSHIPS AUTHORITY,

        Defendants.

-----------------------------------------------------------------x

MEMORANDUM ORDER DISMISSING ADVERSARY
PROCEEDING AND DENYING MOTION FOR PROVISIONAL RELIEF

Pending before the Court is the *Motion for Provisional Relief* (Docket Entry No.
28) (the "Motion"), filed by LUMA Energy, LLC and LUMA Energy Servco, LLC (collectively,
"LUMA"), that seeks certain provisional relief against the Puerto Rico Electric Power Authority
("PREPA") and the Puerto Rico Public-Private Partnerships Authority ("P3A" and, together with
LUMA and PREPA, the "Parties"), each a defendant in the above-captioned adversary
proceeding, pursuant to the Puerto Rico Transmission and Distribution System Operation and
Maintenance Agreement, dated as of June 22, 2020, by and among PREPA, P3A, and LUMA, as
supplemented (Docket Entry No. 1-1) (the "T&D OMA").[2]

On September 3, 2025, the Court entered an order (Docket Entry No. 26) (the
"Scheduling Order") that, among other things, bifurcated briefing on the Motion into two phases:
(i) whether the Court has jurisdiction to hear the matter and, if so, whether the Court should
abstain from exercising its jurisdiction; and (ii) to the extent the Court concludes it has such
jurisdiction and should not abstain, the merits of the Motion.  This Memorandum Order
addresses solely the matters raised in the first phase of briefing.

---

[2]     All docket entry references are to those in Adv. Proc. No. 25-00043 (the "Adversary
Proceeding"), unless otherwise noted.

P3A—through its agent, the Puerto Rico Fiscal Agency and Financial Advisory

Authority ("AAFAF")—filed papers in opposition to the Motion (Docket Entry No. 33) (the

"P3A Jurisdictional Opposition"), requesting dismissal of the complaint (Docket Entry No. 1)

(the "Complaint") for lack of subject matter jurisdiction or, alternatively, the Court's abstention

to the extent the Court concludes such jurisdiction exists.  Each of LUMA and the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board"), on behalf of

PREPA, have filed replies.[3]  (See *LUMA Energy, LLC and LUMA Energy Servco, LLC's Reply

to Puerto Rico Public-Private Partnerships Authority's Jurisdictional Opposition*, Docket Entry

No. 46 (the "LUMA Reply"); *Reply of the Financial Oversight and Management Board for

Puerto Rico to the Opposition of the Puerto Rico Public-Private Partnerships Authority to

LUMA's Complaint and Motion for Provisional Relief Based on Lack of Subject Matter

Jurisdiction*, Docket Entry No. 47 (the "FOMB Reply").)  P3A filed a surreply (Docket Entry

No. 51) (the "P3A Surreply") solely with respect to the FOMB Reply.

The Court has considered carefully all of the submissions and, for the reasons

discussed below, concludes that, while dismissal for lack of subject matter jurisdiction is not

required, abstention from adjudicating the Adversary Proceeding is nonetheless appropriate.

Given the Court's ruling, the Court need not reach the merits of the Motion, and the second

phase of briefing, as contemplated by the Scheduling Order, will not take place.

---

[3]     LUMA supplemented the LUMA Reply with an additional exhibit (Docket Entry No. 58-
2).  (See *Order Granting Motion of LUMA Energy, LLC and LUMA Servco, LLC for
Leave to Supplement Reply to Puerto Rico Public-Private Partnerships Authority's
Jurisdictional Opposition with Additional Exhibit*, Docket Entry No. 63.)

BACKGROUND

The material facts set forth herein are drawn from the Complaint and exhibits attached thereto, unless otherwise specified, and are undisputed.

1.  The Parties and the T&D OMA

PREPA, a public corporation and instrumentality of the Government of Puerto Rico, is owner of a transmission and distribution system (the "T&D System").  (Compl. ¶¶ 18-19.)  On July 2, 2017, the Oversight Board filed a voluntary petition for relief for PREPA pursuant to Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").[4]  (Compl. ¶ 23.)

After the commencement of PREPA's Title III case, the Puerto Rico legislature enacted the Puerto Rico Electric Power System Transformation Act, Act 120-2018 (as amended, "Act 120") on June 21, 2018, as part of an effort to modernize and improve Puerto Rico's electric system.  (Compl. ¶¶ 25-26.)  Among other things, Act 120 established a legal framework for the sale, disposition, and/or transfer of PREPA's assets, operations, functions, and services, including a transaction under which a private manager would assume the operation and management of the T&D System while ownership of the system remained with PREPA.  (Compl. ¶ 26.)

Under Act 120, P3A, a public corporation, is the designated government entity responsible for facilitating public-private partnerships in the electric sector.  (See P3A

---

[4]    PROMESA is codified at 48 U.S.C. § 2101 et seq.  References to "PROMESA" section numbers in the remainder of this Memorandum Order are to the uncodified version of the legislation.  References herein to the provisions of Title 11 of the United States Code (the "Bankruptcy Code") are to sections made applicable in these cases by section 301 of PROMESA, 48 U.S.C. § 2161, unless otherwise stated.

Jurisdictional Opp. ¶ 1; FOMB Reply ¶ 9.)  In its role, P3A established a "Partnership Committee" that, following a competitive bidding process, ultimately selected LUMA to serve as the operation and maintenance service provider.  (Compl. ¶ 27.)

On June 22, 2020, the Parties entered into the T&D OMA, which provided for LUMA to assume the operation and management of the T&D System, PREPA to retain ownership of the same, and P3A to serve as the "Administrator" and oversee the contract's operation and liaise between LUMA and PREPA.[5]  (Compl. ¶ 35.)  Pursuant to the T&D OMA, LUMA has served as "Operator" of the T&D System since June 1, 2021.  (Compl. ¶ 15.)

2.  Dispute Resolution Under the T&D OMA

As relevant here, and subject to certain exceptions, Article 15 of the T&D OMA sets forth the "sole and exclusive procedures" for the resolution of "any dispute among the Parties arising out of, relating to or in connection with [the T&D OMA] or the existence, interpretation, breach, termination or validity thereof" (each, a "Dispute").[6]  (T&D OMA § 15.1.) In connection with such procedures, LUMA "acknowledges and agrees that [P3A] (or any Designated Person appointed by [P3A]) shall be authorized to participate in or act for and on behalf of [PREPA]."  (T&D OMA § 15.1.)

As a general matter, written notice of a Dispute commences the Article 15 dispute resolution procedures, which then require "Designated Person[s]" of each Party to "negotiate in

_____

[5]    The T&D OMA was approved by the boards of directors of P3A and PREPA, the Governor of Puerto Rico, the Oversight Board, and other key stakeholders.  (Compl. ¶ 27.)  In addition, the Puerto Rico Energy Bureau evaluated the T&D OMA and issued the Energy Certificate of Compliance, certifying that the agreement complied with Act 120 and the governing regulatory framework.  (Compl. ¶ 27; T&D OMA at 11.)

[6]    "Parties" in the T&D OMA is defined to include LUMA, PREPA, and P3A.  Other defined terms used by reference to the T&D OMA and not otherwise defined for that purpose herein shall have the meanings ascribed to them in the T&D OMA.

good faith and attempt to resolve the Dispute within [thirty] days" from the issuance of such

notice, unless otherwise extended (the "Negotiation Period").  (T&D OMA §§ 15.2(a), 15.3(a).)

In the event a Dispute remains unresolved after the Negotiation Period concludes, the T&D

OMA offers two paths for a "final and binding determination" that hinge on whether the Dispute

is a "Technical Dispute."[7]  (T&D OMA § 15.3(b).)

       Where a Dispute is a "Technical Dispute," it "shall be referred to an independent

expert" in accordance with the procedures and confidentiality provisions set forth in section 15.4

for resolution (an "Expert Technical Determination").  (T&D OMA § 15.4.)  For all other

Disputes, either LUMA or P3A "may refer the Dispute to mediation" through written notice.

(T&D OMA § 15.5(a); see also T&D OMA §§ 15.5(b)-(c) (outlining the procedures and

confidentiality parameters governing mediation).)  If mediation proves unsuccessful and the

Dispute remains unresolved ninety days after the date the mediator is selected, "either Party may

initiate a civil action in the Commonwealth Court."[8]  (T&D OMA § 15.6(a).)

---

[7]    The T&D OMA sets forth an exclusive list of what comprises a "Technical Dispute,"
defining each of the following terms: (i) "Front-End Transition Service Fee Estimate
Dispute; (ii) "Front-End Transition Service Fee Dispute"; (iii) "Back-End Transition
Service Fee Estimate Dispute"; (iv) "Back-End Transition Service Fee Dispute"; (v)
"Handover Checklist Dispute"; (vi) "Administrator Dispute"; (vii) "Service Fee
Dispute"; (viii) "Budget Dispute"; (ix) "Service Account Dispute"; (x) "Disallowed Costs
Dispute"; and (xi) "Force Majeure Event Dispute."  (T&D OMA § 15.3(b)(i).)  In
addition, PREPA and P3A may also "mutually agree in writing" that an "engineering or
technical dispute . . . is a Technical Dispute."  (T&D OMA § 15.3(b)(i).)

[8]    The T&D OMA characterizes litigation as a "final resort."  (See T&D OMA § 15.6.)
Indeed, each Party to the T&D OMA "agrees that it may not initiate a civil action as
provided in Section 15.6 . . . (other than provisional relief sought on an expedited basis)
unless (i) the matter in question has first been submitted to mediation . . . or (ii) such
Party would be barred from asserting its claim in a civil action if it were required to
submit to mediation."  (T&D OMA § 15.5(a).)  The term "Commonwealth Court" is
defined in the T&D OMA to refer to the "Commonwealth Court of First Instance, San
Juan Part."  (T&D OMA at 8.)

With respect to litigation under the T&D OMA, section 15.6(a) of the T&D OMA provides that "[t]he Parties acknowledge and understand that, to resolve any and all claims arising out of [the T&D OMA] (other than any Technical Dispute), they may file a civil action . . . in the Commonwealth Court."  (T&D OMA § 15.6(a).)  The provision notes that "[PREPA] and [LUMA] each irrevocably consents to the exclusive jurisdiction of such courts in any such actions or proceedings, waives any objection it may have to the jurisdiction of any such action or proceeding, as well as objections or defenses based on sovereign immunity."  (T&D OMA § 15.6(a).)  The Parties further "acknowledge and agree that the terms and conditions of [the T&D OMA] have been freely, fairly and thoroughly negotiated."  (T&D OMA § 15.6(a).)

Notwithstanding the foregoing, section 15.8 of the T&D OMA permits the Parties to initiate "a proceeding in the Commonwealth Court for the purpose of obtaining any emergency or provisional remedy to protect its rights that may be necessary and that is not otherwise available under [the T&D OMA]."  (T&D OMA § 15.8.)  With respect to "Technical Disputes," the commencement of or participation in such an action for provisional relief does "not constitute a waiver of the requirements or procedures of Section 15.5," which govern mediation.  (T&D OMA § 15.8.)

### 3.   The P3A Disputes and the Threshold Dispute

On July 22, 2025, P3A, in its capacity as Administrator under the T&D OMA, served a notice of dispute on LUMA (Docket Entry No. 1-2) (the "Notice of Dispute") that set forth six issues of dispute (collectively, the "P3A Disputes"), each of which P3A has categorized as a "Technical Dispute."  (Compl. ¶ 41; *Amended Joint Status Report Regarding Motion to Seal and Motion for Provisional Relief*, Docket Entry No. 22 (the "Joint Status Report") ¶ 1; see also Notice of Dispute at 3, 21, 43, 46, 51, and 78 (referring to each as a "Technical Dispute").)  In

connection with the P3A Disputes, P3A demanded the "immediate commencement" of dispute resolution procedures.  (Notice of Dispute at 3.)  Moreover, P3A indicated that, should LUMA fail to "cure each breach during the Article 15 process," P3A "stands ready" to exercise the remedy of early termination of the T&D OMA.[9]  (Notice of Dispute at 81.)

The six P3A Disputes, each of which concerns LUMA's alleged failure to comply with its contractual obligations under the T&D OMA, are as follows:

(1) <u>Federal Funding</u> – P3A alleges that LUMA has failed to comply with federal funding obligations, failed to provide required documentation for federally funded projects, and exhibited "systemic deficiencies" in cash flow reporting, reconciliation of federal expenditures, and timely requests for reimbursement.  (Notice of Dispute at 3-21; Compl. ¶ 42.)

(2) <u>Compensation & Budgets: Service Account Funding</u> – P3A alleges that LUMA failed to generate sufficient revenues, timely obtain reimbursement for federally funded projects, and manage service account funding, culminating in a liquidity crisis for PREPA. (Notice of Dispute at 21-43; Compl. ¶ 42.)

(3) <u>Performance of O&M Services: April 16, 2025 Blackout</u> – P3A alleges that LUMA failed to comply with its contractual obligations following the island-wide blackout on April 16, 2025.  (Notice of Dispute at 43-46; Compl. ¶ 42.)  The Complaint further indicates that P3A also implies that LUMA has failed to meet certain reporting requirements under the T&D OMA and alleges that LUMA has failed to manage vegetation.  (Compl. ¶ 42.)

(4) <u>Performance of O&M Services: Vegetation Management, Transmission Lines, and Public Lighting</u> – P3A alleges that LUMA failed to appropriately manage vegetation, address certain high voltage lines, inspect certain assets in advance of hurricane season, and adequately maintain and plan for public lighting.  (Notice of Dispute at 46-51; Compl. ¶ 42.)

(5) <u>Audit and Financial Reporting Obligations</u> – P3A alleges that LUMA failed to provide accurate and timely financial data in violation of its audit and financial reporting obligations.  (Notice of Dispute at 51-78; Compl. ¶ 42.)

(6) <u>Collection of Pole Attachment Fees</u> – P3A alleges that LUMA's failure to collect pole attachment fees owed by third-party telecommunications and cable entities constitutes a

---

[9]     In certain instances, the Notice of Dispute states that PREPA will also pursue remedies under the T&D OMA.  (<u>See</u>, <u>e.g.</u>, Notice of Dispute at 3 (noting that, should LUMA fail to remedy the alleged violations, "PREPA and P3A will pursue every remedy the T&D OMA allows").)

violation of its "core" billing and collection obligations under the T&D OMA. (Notice of Dispute at 78-81; Compl. ¶ 42.)

In a letter dated July 25, 2025, LUMA disagreed with P3A's allegations and, notably, its characterization of the P3A Disputes as being "Technical Disputes" subject to Expert Technical Determination under the T&D OMA (the "Threshold Dispute"). (Compl. ¶ 43.) Rather, LUMA maintains that the P3A Disputes are non-technical "Disputes" subject to mediation and, to the extent applicable, litigation under sections 15.5 and 15.6 of the T&D OMA, respectively. (Compl. ¶¶ 43-44.) LUMA characterized its July 25, 2025 letter as its own notice of dispute with respect to the Threshold Dispute. (See Joint Status Report ¶ 2 (stating that the July letter noted the existence of the Threshold Dispute).)

In accordance with section 15.3 of the T&D OMA, the Parties' designated representatives met and discussed the Threshold Dispute as well as the "substance of Defendants' allegations." (Compl. ¶ 46; Joint Status Report ¶ 3.) No resolution was reached, and LUMA subsequently demanded mediation with respect to the Threshold Dispute in accordance with section 15.5 of the T&D OMA; P3A declined to participate. (Compl. ¶¶ 46, 48-49; Joint Status Report ¶ 3.) Instead, P3A indicated an intent to proceed with the dispute resolution procedures set forth in section 15.4 for "Technical Disputes" with respect to the P3A Disputes, notwithstanding the Threshold Dispute. (Compl. ¶ 49; Joint Status Report ¶ 3.) The Parties' inability to reach a resolution with respect to the Threshold Dispute gave rise to the present Adversary Proceeding.[10]

---

[10]    The Parties also separately met and conferred with respect to the issues presented in the Motion and were unable to reach resolution. (See Joint Status Report ¶ 7.)

    4.  <u>The Adversary Proceeding and the Motion</u>

On August 25, 2025, LUMA commenced the Adversary Proceeding, which

asserts three causes of action against Defendants:

- The first cause of action ("Count I") asserts a claim for breach of contract based on Defendants' failure to participate in mediation, allegedly in violation of the terms of Article 15 of the T&D OMA, that allegedly has or will result in damages to LUMA. (Compl. ¶¶ 52-60.)

- The second cause of action ("Count II") seeks a declaratory judgment that the Threshold Dispute is subject to the dispute resolution procedures set forth in sections 15.5 and 15.6 of the T&D OMA and that the T&D OMA is a "valid and binding contract." (Compl. ¶¶ 61-66.)

- The third cause of action ("Count III") seeks a declaratory judgment that the P3A Disputes are non-technical "Disputes" subject only to the dispute resolution procedures set forth in sections 15.5 and 15.6 of the T&D OMA and, again, that the T&D OMA is a "valid and binding contract." (Compl. ¶¶ 67-76.)

In connection with the foregoing, LUMA seeks (i) judgment in its favor on each

of its claims, including the relief sought in Count II; (ii) an order directing the Parties to mediate

the Threshold Dispute; (iii) injunctive relief to prohibit Defendants from invoking the "Technical

Dispute" resolution process set forth in section 15.4 of the T&D OMA with respect to the P3A

Disputes until the Threshold Dispute is resolved; (iv) the relief sought in Count III if mediation

of the Threshold Dispute proves "unsuccessful or [is] deemed to be futile"; and (v) an award of

damages for legal fees and expenses incurred in connection with the Adversary Proceeding.

(Compl. at 23.)

Subsequent to the commencement of the Adversary Proceeding, LUMA filed the

Motion, which requests that the Court (i) enjoin Defendants from initiating or continuing the

dispute resolution procedures set forth in Article 15 with respect to the P3A Disputes until

resolution of the Threshold Dispute, and (ii) require Defendants to mediate the Threshold

Dispute pursuant to section 15.5 of the T&D OMA.  (Mot. at 4, 16-17.)

On September 3, 2025, in light of P3A's expressed willingness, the Court stayed the "Technical Dispute" resolution process of the P3A Disputes pending resolution of any opposition to the Court's jurisdiction.  (See Scheduling Order at 2.)  P3A, through its agent AAFAF, then filed the P3A Jurisdictional Opposition.

DISCUSSION

P3A moves for dismissal of the Complaint and denial of the Motion on grounds that the Court lacks subject matter jurisdiction and that P3A is an indispensable party entitled to sovereign immunity under the Eleventh Amendment, rendering it immune from suit in federal court.  (P3A Jurisdictional Opp. at 1, 3-4, 21.)  To the extent the Court determines that it has jurisdiction, P3A further maintains that the Court should abstain from exercising such jurisdiction, arguing that section 306(b) of PROMESA does not preclude abstention.  (P3A Jurisdictional Opp. at 2; P3A Surreply at 3 n.6.)

LUMA and the Oversight Board contend otherwise, maintaining that the Court possesses both original subject matter jurisdiction under section 306(a)(2) of PROMESA and exclusive jurisdiction under section 306(b) of PROMESA.  (See Motion at 10-12 (contending that the Court has "related to" jurisdiction to decide the Threshold Dispute); LUMA Reply at 6-15 (arguing that "arising in" and "related to" jurisdiction under section 306(a)(2) and exclusive jurisdiction under section 306(b) of PROMESA are all present); FOMB Reply ¶¶ 21, 25 (contending that the Court possesses both "related to" and exclusive jurisdiction under sections 306(a)(2) and 306(b) of PROMESA, respectively).)  In addition, LUMA and the Oversight Board further argue that P3A lacks sovereign immunity and that abstention is not warranted here. (LUMA Reply at 15, 24-25; FOMB Reply ¶¶ 32-36.)

1.  The Oversight Board Has Authority to Conduct This Litigation on PREPA's
    Behalf

As an initial matter, P3A and the Oversight Board disagree over which entity is

the proper representative of PREPA in this Adversary Proceeding.  While P3A acknowledges

that the Oversight Board has a right to be heard with respect to the Motion, it asserts that,

pursuant to the terms of the T&D OMA, it is the party that is authorized to speak on behalf of

PREPA.  (See P3A Jurisdictional Opp. at 1 n.2 (contending that P3A has a "contractual right to

defend suits against PREPA" and submitting that it "speaks on behalf of PREPA"); P3A

Surreply ¶ 4 (stating that PREPA "designated P3A to act and speak on its behalf with respect to

matters relating to the T&D OMA, and the FOMB acceded to that delegation").)  The Oversight

Board disagrees, arguing instead that, pursuant to section 315(b) of PROMESA, it is PREPA's

sole representative for these purposes and P3A lacks authority to represent PREPA in these

proceedings.  (FOMB Reply at 1 n.1.)  For the reasons discussed below, the Court finds that the

language of the T&D OMA does not preclude the Oversight Board from acting on behalf of

PREPA in this Adversary Proceeding.

Section 315(b) of PROMESA, which pertains to the role and capacity of the

Oversight Board, provides that "[t]he Oversight Board in a case under [Title III] is the

representative of the debtor."  48 U.S.C.A. § 2175(b) (Westlaw through P.L. 119-57); see Fin.

Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC, 590 U.S. 448, 466 (2020) (indicating that

the Oversight Board may take related and necessary actions on behalf of, and serves as the

representative of, Puerto Rico or its instrumentalities in bankruptcy proceedings before the U.S.

District Court for Puerto Rico).  Accordingly, under PROMESA, the Oversight Board "act[s] as

the sole statutory representative of a territory and each of its covered territorial instrumentalities

in their Title III cases."  In re Fin. Oversight & Mgmt. Bd. for P.R., 432 F. Supp. 3d 25, 29

(D.P.R.), aff'd, 954 F.3d 1 (1st Cir. 2020) (citations omitted).

P3A rests its position with respect to representation in this proceeding on

provisions of the T&D OMA, which the Oversight Board approved, under which PREPA assigns

and delegates to P3A "rights and responsibilities under [the T&D OMA]" and grants P3A the

ability to issue approvals or consents binding on PREPA where PREPA's approval or consent to

a LUMA submission, request, or report is required under the agreement.  (P3A Surreply ¶ 3

(citing T&D OMA §§ 6.1(b) & 6.2(c)).)  P3A also notes its contractually-conferred ability to

bind PREPA in connection with any matter contemplated under the Puerto Rico Transmission

and Distribution System Supplemental Terms Agreement, dated June 22, 2020 (the "T&D

Supplemental Agreement").  (P3A Surreply ¶ 4 (citing T&D Supp. Agreement § 8.1(a)).)  P3A

asserts that that these provisions grant it a "contractual right to defend suits against PREPA" and

to serve as PREPA's "voice on matters involving LUMA and the T&D OMA," all of which P3A

argues the Oversight Board "acceded to" by consenting to the OMA.  (P3A Jurisdictional Opp. at

1 n.2; P3A Surreply ¶¶ 3-5.)

The T&D OMA's assignment and delegation provisions, however, are limited to

those rights and responsibilities "necessary for [P3A] to administer [the T&D OMA] and act as

[PREPA's] liaison with [LUMA] in connection with the O&M Services."  (T&D OMA § 6.1(b).)

Under the T&D OMA, P3A is tasked with "overseeing . . . [LUMA's] performance of the O&M

Services under [the T&D OMA]."[11]  (T&D OMA § 6.2(a).)  "Without limiting the generality of

---

[11]     The term "O&M Services" is defined in the T&D OMA to comprise the "management,
operation, maintenance, repair, restoration and replacement and other related services for
the T&D System, in each case that are customary and appropriate for a utility
transmission and distribution system service provider."  (T&D OMA § 5.1.)

the foregoing," section 6.2(a) sets forth a list of rights and responsibilities of P3A "with respect to the operation, management and maintenance of the T&D System."  (T&D OMA § 6.2(a).)  While the list is not exhaustive, none of the enumerated rights and responsibilities of P3A suggests authority to represent PREPA in lawsuits.  (See T&D OMA § 6.2(a).)  Indeed, as noted above, P3A concedes that the Oversight Board has a "right to be heard on the Motion under PROMESA."  (P3A Jurisdictional Opp. at 1 n.2.)

Commonwealth law governs interpretation of the T&D OMA.  (See T&D OMA § 20.15 (providing that the T&D OMA is to be interpreted, construed, and governed by Commonwealth law "except where the federal supremacy clause requires otherwise"); see also T&D Supp. Agreement § 10.4 (incorporating section 20.15 of the T&D OMA by reference mutatis mutandis).)  Under Puerto Rico law, "[h]owever general the terms of the contract may be, there should not be understood as included therein things and cases different from those with regard to which the persons interested intended to contract."  31 L.P.R.A. § 3473.  Moreover, "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."  31 L.P.R.A. § 3471.  Given the gravity and breadth of the Oversight Board's statutory authority as sole representative of the Title III debtor in restructuring proceedings that were in progress at the time the Parties entered into the T&D OMA, neither the clear terms of the T&D OMA nor anything in the context of the transaction supports P3A's contention that the Oversight Board ceded its authority to act as PREPA's sole representative in litigation matters concerning LUMA.  See, e.g., Porto Rico Iron Works, Inc. v. Union De Empleados De Oficina De Puerto Rico Iron Works, Inc., No. 74-1306, 1977 WL 1752, at *2 (D.P.R. Sept. 14, 1977) (declining to "presume[]" the retroactivity of certain clauses in a collective bargaining agreement in accordance with 31 L.P.R.A. §§ 3471 and

3473 given the absence of "expressed indicators or obscure language" suggesting otherwise).

Thus, the Court concludes that the Oversight Board, rather than P3A, is the entity properly

authorized to conduct this litigation on PREPA's behalf.

>    2. The Court Has Subject Matter Jurisdiction Pursuant to Section 306(a)(2) of
>    PROMESA

The Complaint alleges that the Court has subject matter jurisdiction pursuant to

28 U.S.C. § 1331 and 48 U.S.C. § 2166 because the Adversary Proceeding is a "civil proceeding

arising in or related to cases under PROMESA."[12]  (Compl. ¶ 10.)  "Related to" jurisdiction

exists, the Complaint contends, because the Adversary Proceeding "will have an effect on the

administration of the bankruptcy estate."  (Compl. ¶ 10; see also id. ¶¶ 11-13 (noting that the

T&D OMA is "integral to PREPA's restructuring," the P3A Disputes will impact PREPA's

assets, and resolution of the Threshold Dispute necessarily pertains to the administration of the

estate).)  For the reasons discussed below, the Court finds that "related to" jurisdiction exists.

Section 306(a)(2) of PROMESA provides that district courts shall have "original

but not exclusive jurisdiction of all civil proceedings arising under [Title III], or arising in or

related to cases under [Title III]."  48 U.S.C.A. § 2166(a)(2) (Westlaw through P.L. 119-57).  In

interpreting the jurisdictional bounds of section 306(a)(2), case law applying the analogous

bankruptcy jurisdiction statute, 28 U.S.C. § 1334(b), has offered instructive guidance.  In re Fin.

Oversight & Mgmt. Bd. for P.R., 709 F. Supp. 3d 52, 63 (D.P.R. 2023); see also Fin. Oversight

---

[12]    Section 305 of PROMESA provides, in relevant part, that "unless the Oversight Board
consents . . . the court may not, by any stay, order, or decree, in the case or otherwise,
interfere with . . . the use or enjoyment by the debtor of any income-producing property."
48 U.S.C.A. § 2165 (Westlaw through P.L. 119-57).  The Oversight Board indicates that,
while it does not take a position on whether section 305 of PROMESA applies, the
Oversight Board consents to the Court presiding over the Adversary Proceeding to the
extent the provision is deemed applicable.  (FOMB Reply at 15 n.10.)

& Mgmt. Bd. for P.R. v. Hernández-Montañez (In re Fin. Oversight & Mgmt. Bd. for P.R.), 77

F.4th 49, 61 (1st Cir. 2023) ("Hernández-Montañez") (noting that, although a "rigid[] import" of

title 11 jurisdiction tests should be avoided, "general principles from . . . title 11 case law are

instructive").

   Accordingly, a proceeding "arises under" Title III when the "cause of action is

created by Title III." In re Fin. Oversight & Mgmt. Bd. for P.R., 709 F. Supp. 3d at 63 (citing

New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. &

Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002)); see Hernández-Montañez, 77 F.4th at 60 (finding

that "arising under" jurisdiction was not at issue because it was undisputed that Title I and Title

II of PROMESA created the cause of action as opposed to Title III).  Meanwhile, a proceeding

"arises in" a Title III case where such a proceeding would have "no existence outside of the

bankruptcy." Gupta v. Quincy Med. Ctr., 858 F.3d 657, 664-65 (1st Cir. 2017) (quoting Wood

v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)).  In determining whether "arising in"

jurisdiction exists, "the fundamental question is whether the proceeding by its nature, not its

particular factual circumstance, could arise only in the context of a bankruptcy case" as opposed

to any reliance on a "but for" test.  Fin. Oversight & Mgmt. Bd. for P.R. v. Pierluisi Urrutia (In

re Fin. Oversight & Mgmt. Bd. for P.R.), 650 B.R. 334, 348-49 (D.P.R.) ("Pierluisi Urrutia")

(quoting Gupta, 858 F.3d at 664-65), aff'd, 77 F.4th 49 (1st Cir. 2023).

   Finally, a proceeding is "related to" a Title III case when the proceeding

"potentially [has] some effect on the bankruptcy estate, such as altering [a] debtor's rights,

liabilities, options, or freedom of action, or otherwise [has] an impact upon the handling and

administration of the bankrupt estate."  In re Middlesex Power Equip. & Marine, Inc., 292 F.3d

at 68 (quoting Smith v. Com. Banking Corp. (In re Smith), 866 F.2d 576, 580 (3d Cir. 1989));

see Torres Cruz v. LUMA Energy, LLC (In re Fin. Oversight & Mgmt. Bd. for P.R.), 631 B.R. 607, 610 (D.P.R. 2021) ("Torres Cruz") (stating that "related to" jurisdiction exists when the outcome of a proceeding "could conceivably have any effect on the estate" (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984))).  "[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of the provision."  Id. (alteration in original) (quotation marks omitted) (quoting Pacor, 743 F.2d at 994).

Here, there is no "arising under" jurisdiction because the causes of action asserted in the Complaint arise solely in connection with the T&D OMA and its interpretation under Commonwealth law and were not created by Title III.  (See Complaint ¶ 1 (stating that LUMA "brings this action because the Parties disagree on the proper interpretation of certain dispute-resolution provisions in the [T&D OMA]" and "disagree on how to properly resolve that disagreement"); Complaint ¶¶ 52-76 (asserting one cause of action for breach of Article 15 of the T&D OMA and two causes of action for declaratory judgment concerning the construction of Article 15 with respect to the Threshold Dispute and P3A Disputes); T&D OMA § 20.15 (providing that Commonwealth law governs the T&D OMA "except where the federal supremacy clause requires otherwise").)  LUMA and the Oversight Board do not dispute this. (See LUMA Reply at 5-15 (contesting that it concedes the Court's lack of "arising under" jurisdiction and only setting forth arguments that the Court has "arising in" and "related to" jurisdiction); FOMB Reply ¶¶ 25-31 (arguing only that "related to" jurisdiction is present).)

For similar reasons, there is also no "arising in" jurisdiction because the disputes underlying the Complaint may exist outside of bankruptcy.[13]  As noted, each of LUMA and the Oversight Board concede that the Complaint and the underlying disputes are merely matters of contract interpretation and Commonwealth law.  (See LUMA Reply at 31 (stating that "[t]here is no dispute that the issues raised in LUMA's complaint are matters of contract interpretation governed by Commonwealth law"); FOMB Reply ¶ 42 (acknowledging that the Adversary Proceeding involves "interpretation of the T&D OMA under Puerto Rico contract law" and, in essence, "straightforward contract claims").)  Indeed, such claims could have arisen irrespective of whether a Title III case exists.  (See LUMA Reply at 3-4 (stating that the T&D OMA was a contract "with a 15-year minimum term that was designed to start after PREPA exited Title III" with provisions drafted in contemplation of "resolving disputes after PREPA's restructuring was complete" (emphasis added)).)

As for "related to" jurisdiction, the Court concludes that such jurisdiction exists with respect to the Adversary Proceeding.  The Court previously held that PREPA's contractual rights in the T&D OMA are "among the property interests protected by section 362(a)(3) of the Bankruptcy Code" such that actions seeking to exercise control over it would violate the

---

[13]    LUMA contends that "arising in" jurisdiction is present because the Adversary Proceeding pertains to a PREPA postpetition contract that is critical to its restructuring efforts, rendering it a "core" proceeding pursuant to 28 U.S.C. § 157(b).  (LUMA Reply at 6-7, 9; see also FOMB Reply ¶ 43 (stating that, to the extent the Court determines the Adversary Proceeding is "core," it would, by analogy to 28 U.S.C. § 157(b), be a proceeding that that "arises under" or "arises in" Title III).)  PROMESA, however, neither incorporates 28 U.S.C. § 157 nor explicitly provides for any "core" versus "non-core" distinction in determining the scope of the Court's subject matter jurisdiction.  (See FOMB Reply at 19 n.13 (acknowledging that 28 U.S.C. § 157(b) "only applies in matters under title 11" and "has no direct application to this proceeding").)  Thus, the Court need not address LUMA's argument at this time.

automatic stay.  Senate of P.R. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.), No. 17 BK 3283-LTS, 2022 WL 17413011, at *3 (D.P.R. Feb. 7, 2022).  In this instance, the outcome of the Adversary Proceeding will require interpretation of the T&D OMA's terms and a determination of the proper dispute resolution path to address the Threshold Dispute and the P3A Disputes.  Resolution will necessarily touch upon PREPA's contractual rights under the T&D OMA, which is property of PREPA.  See Voya Institutional Tr. Co. v. Univ. of Puerto Rico, 266 F. Supp. 3d 590, 599 (D.P.R. 2017) (concluding that "related to" jurisdiction exists because the outcome of the litigation "may ultimately have an effect on the assets that form part of the Commonwealth's Title III estate"); cf. Pelletier v. Yellow Transp., Inc., 549 F.3d 578, 581 (1st Cir. 2008) (noting that "a contractual clause selecting either a judicial or an arbitral forum for the resolution of disputes establishes a legal right which is analytically distinct from the rights being asserted in the dispute to which it is addressed" (quoting Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 195 (3d Cir.1983))).

In addition, matters pertaining to liability and value in PREPA's unresolved Title III case have the potential to affect the administration of PREPA's Title III estate.  Here, the T&D OMA was established to administer PREPA's operations as part of an effort to "transform Puerto Rico's energy system into a modern, sustainable, reliable, efficient, cost-effective and resilient system."  (T&D OMA at 1.)  Disputes over the validity of and performance under the T&D OMA then, an agreement that concerns the operation and management of substantial revenue-generating assets, affects PREPA's Title III case in a manner sufficient to establish "related to" jurisdiction.  See Work/Family Directions, Inc. v. Children's Discovery Ctrs., Inc. (In re Santa Clara Cnty. Child Care Consortium), 223 B.R. 40, 45 (B.A.P. 1st Cir. 1998) ("There must be some nexus between the 'related proceeding' and the title 11 case for the bankruptcy

court to have subject matter jurisdiction."); Hernández-Montañez, 77 F.4th at 60 ("We have

observed that '[a]lthough 'related to' jurisdiction 'cannot be limitless,' it is nonetheless 'quite

broad.'" (alteration in original) (quoting Gupta, 858 F.3d at 663)).

Accordingly, the Court concludes that "related to" jurisdiction exists and that it

has subject matter jurisdiction pursuant to section 306(a)(2) of PROMESA.

### 3.   Abstention is Nonetheless Appropriate

While the Court has subject matter jurisdiction of the Adversary Proceeding, it

finds that it is nonetheless appropriate to decline to exercise this jurisdiction pursuant to section

309 of PROMESA.[14]  Section 309 of PROMESA provides that "[n]othing in [Title III] prevents

a district court in the interests of justice from abstaining from hearing a particular proceeding

arising in or related to a case under [Title III]."  48 U.S.C.A. § 2169 (Westlaw through P.L. 119-

57).  The language of section 309 of PROMESA "mirrors the language in 28 U.S.C.

§ 1334(c)(1)" such that case law applying 28 U.S.C. § 1334(c)(1) may be "instructive for this

Court."  Asociación de Salud Primaria, 330 F. Supp. 3d at 682.

---

[14]    LUMA and the Oversight Board also contend that the Court also has jurisdiction of the
T&D OMA pursuant to section 306(b) of PROMESA, which confers upon the Court
"exclusive jurisdiction of all property, wherever located, of the debtor as of the
commencement of the case."  48 U.S.C.A. § 2166(b) (Westlaw through P.L. 119-57).
Section 306(b) does not, however, preclude abstention with respect to contract disputes.
See Asociación de Salud Primaria de P.R., Inc. v. Puerto Rico (In re Fin. Oversight &
Mgmt. Bd. for P.R.), 330 F. Supp. 3d 667, 674 (D.P.R. 2018) ("Asociación de Salud
Primaria") (stating that the "Court's exclusive jurisdiction over the property of the
Commonwealth as a Title III debtor" would not be "preclusive of remand or abstention");
Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin.
Oversight & Mgmt. Bd. for P.R.), 899 F.3d 13, 22 (1st Cir. 2018) (finding that section
306(b)'s conferral of exclusive jurisdiction does not prevent the Court from lifting the
automatic stay to permit a creditor to seek the appointment of a receiver in another court).

Under 28 U.S.C. § 1334(c)(1), "[c]ourts have broad discretion to abstain from

hearing a case."  Id. at 682 (citing In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 69).

In determining whether abstention is appropriate under PROMESA, the Court considers factors

bankruptcy courts in Puerto Rico have looked to in deciding whether to abstain under 28 U.S.C.

§ 1334(c)(1).  See id. at 682-83 (drawing from the "conceptually aligned" factors bankruptcy

courts in Puerto Rico and district courts look to in deciding whether to abstain and to remand,

respectively, in "evaluating abstention under PROMESA").  The twelve factors, none of which is

individually dispositive, are the following:

> (1) [T]he effect on the efficient administration of the estate; (2) the
> extent to which state law issues predominate over bankruptcy issues;
> (3) the unsettled nature of applicable law[;] (4) a related proceeding
> in state court; (5) the jurisdictional basis, if any, other than 28 U.S.C.
> § 1334; (6) the degree of relatedness or remoteness of the proceeding
> to the main bankruptcy case; (7) the substance rather than form of
> an asserted core proceeding; (8) the feasibility of severing state law
> claims from core bankruptcy matters to allow judgments to be
> entered in state court to be enforced in bankruptcy court; (9) the
> burden on the bankruptcy docket; (10) the likelihood that the
> bankruptcy court proceeding involves forum shopping by one of the
> parties; (11) the right to jury trial; and (12) the presence of non-
> debtor parties.

Id. at 682 (citing LM Waste Serv. Corp. v. Municipio De Juana Diaz (In re LM Waste Serv.

Corp.), 562 B.R. 845, 851 (Bankr. D.P.R. 2016)).  For the reasons explained below, the Court

finds that abstention is warranted based on an analysis of the most relevant factors.

First, the Adversary Proceeding, which seeks only a determination of the proper

dispute resolution path (i.e., forum) as opposed to the merits of the underlying disputes, does not,

as currently framed, appear likely to have a "material effect on the administration (as opposed to

the magnitude or composition) of PREPA's Title III estate."  Puerto Rico Elec. Power Auth. v.

Vitol S.A., Adv. Proc. No. 17-218-LTS, Docket Entry No. 31 at 11-12 (D.P.R. Feb. 12, 2019)

(considering the extent to which certain removed proceedings would impact the administration of

PREPA's Title III case).  LUMA appears to acknowledge this, pointing the finger at P3A for preventing it from "presenting, in this forum, disputes that will have a profound effect on PREPA's restructuring" and stating that it will amend the Complaint to bring the "underlying disputes to this Court" if mediation proves unsuccessful.  (LUMA Reply at 11-12.)  LUMA argues only that proceeding in the incorrect forum could potentially remove the Court's ability to have insight or control with respect to a "key component of PREPA's restructuring."  (LUMA Reply at 26.)  However, that possibility alone is insufficient to establish that the forum will be significant to the administration of PREPA's Title III case.  See Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co., Inc., No. CIV.A. 10-11376-NMG, 2010 WL 6580503, at *7 (D. Mass. Dec. 28, 2010) (noting that, although a "judgment against the debtor would impact the bankruptcy estate . . . , that impact is not affected by the choice of forum"), report and recommendation adopted, 813 F. Supp. 2d 242 (D. Mass. 2011).

Second, the Adversary Proceeding, which merely requires interpretation of the T&D OMA under Commonwealth law, neither requires interpretation of PROMESA nor directly relates to the restructuring process.  Rather, state law issues predominate, which neither LUMA nor the Oversight Board dispute, and pertain to the postpetition conduct and alleged omissions of LUMA as opposed to the restructuring and treatment of PREPA's obligations.  See Herrero Domenech v. LUMA Energy, LLC, Adv. Proc. No. 22-50, Docket Entry No. 16 at 17 (D.P.R. Oct. 28, 2022) (noting that "[t]he central focus of PREPA's Title III case is the restructuring and treatment of PREPA's pre-petition obligations"), report and recommendation adopted, Adv. Proc. No. 22-50, Docket Entry No. 27 (D.P.R. Jan. 18, 2023).  Both LUMA and the Oversight Board contend that, to the extent the P3A Disputes at issue in the Complaint and Motion constitute the first step in P3A's plan to terminate the T&D OMA, PREPA's Title III could be

profoundly affected.  (See LUMA Reply at 1-2; FOMB Reply ¶¶ 39, 44; *Motion of LUMA Energy, LLC and LUMA Servco, LLC for Leave to Supplement Reply to Puerto Rico Public-Private Partnerships Authority's Jurisdictional Opposition with Additional Exhibit*, Docket Entry No. 58 ¶ 5.)  Termination of the T&D OMA, however, is not presently before the Court in this Adversary Proceeding and, while a possibility, is too attenuated to foreclose abstention at this time with respect to a dispute as to the interpretation of the contract.  "Where issues are far removed or peripheral, and do not involve issues central to the restructuring, abstention is warranted in bankruptcy cases."  Asociación de Salud Primaria, 330 F. Supp. 3d at 683 (citation omitted).

   Third, there is support for the notion that LUMA may be forum shopping.  Section 15.6 of the T&D OMA, which pertains to litigation under the T&D OMA with respect to non-technical Disputes where mediation has proved unsuccessful, provides, in relevant part, that:

> [E]ither Party may initiate a civil action in the Commonwealth Court and in accordance with all applicable rules of civil procedure.  The Parties acknowledge and understand that, to resolve any and all claims arising out of this Agreement (other than any Technical Dispute), they may file a civil action, including actions in equity, in the Commonwealth Court.

(T&D OMA § 15.6(a).)  Moreover, both PREPA and LUMA have each irrevocably consented to the "exclusive jurisdiction of such courts in any such actions or proceedings" and "waive[d] any objection . . . to the jurisdiction of any such action or proceeding, as well as objections or defenses based on sovereign immunity."[15]  (T&D OMA § 15.6(a).)  Each of the Parties has also agreed that "the terms and conditions of [the T&D OMA] have been freely, fairly and thoroughly

---

[15] To the extent there is any ambiguity to the antecedent reference, the Court finds that the "Commonwealth Court" is at least one of "such courts" and the only court PREPA and LUMA have explicitly consented to jurisdiction of civil actions filed there.

negotiated." (T&D OMA § 15.6(a).) In connection with provisional relief specifically, section 15.8 of the T&D OMA further provides that "[n]otwithstanding any other provision in [the T&D OMA], no Party shall be precluded from initiating a proceeding in the Commonwealth Court for the purpose of obtaining any emergency or provisional remedy to protect its rights that may be necessary and that is not otherwise available under [the T&D OMA]." (T&D OMA § 15.8.) To the extent LUMA is seeking to avoid such provisions of the T&D OMA, which the Parties consented to, this too weighs in favor of abstention. See Asociación de Salud Primaria, 330 F. Supp. 3d at 684 (finding that the forum shopping factor "weighs heavily" in favor of abstaining to the extent plaintiffs removed claims "simply in order to progress in another forum").

Fourth, "avoidance of unnecessary burden [also] weighs in favor of abstention." Id. In this instance, failing to abstain from exercising jurisdiction over a purely state law contract dispute that involves non-debtor parties, LUMA and P3A, with no direct impact on PREPA's Title III case at this time would only add burden on the Court's docket.

Finally, LUMA argues that abstention is not warranted due to the lack of a pending state proceeding. (See LUMA Reply at 30-31.) However, as already noted, no single factor is dispositive, and as the "sole factor weighing against abstention . . . [such factor] barely moves the scale overwhelmingly tipped in favor of abstention." Scully v. Danzig (In re Valley Food Servs., LLC), 400 B.R. 724, 732 (D. Me. 2008); see also Flores Rivera v. Telemundo Grp., 133 B.R. 674, 677 (D.P.R. 1991) (considering the lack of a parallel state action as only one of several factors weighing in favor of the court declining to abstain).

Accordingly, for the reasons discussed above, the Court declines pursuant to section 309 of PROMESA to exercise its subject matter jurisdiction.

CONCLUSION

For the foregoing reasons, the Complaint is dismissed in its entirety as to all

Defendants, without prejudice to litigation in the Commonwealth Court, and the Motion is

denied as moot.  In light of the dismissal of the Complaint, the Court deems it unnecessary to

address the remaining arguments raised, including whether P3A is an indispensable party entitled

to sovereign immunity.  This Memorandum Order resolves Docket Entry No. 28.  The Clerk of

Court is respectfully directed to enter judgment and close this case.


SO ORDERED.

Dated: December 19, 2025

　/s/ Laura Taylor Swain　
LAURA TAYLOR SWAIN
United States District Judge